Concerning the Application for Water Rights of Purgatoire River Water Conservancy District in Las Animas County.

## PURGATOIRE RIVER WATER CONSERVANCY DISTRICT, Appellant,

v.

Steven J. WITTE, Division Engineer, Water Division No. 2; District 67 Ditch Association, individually, and for its members, as follows: the Amity Mutual Irrigation Company, the Fort Bent Canal and Irrigation Company, Keesee Ditch, Buffalo Mutual Irrigation Company, X Y & Graham Canals, Lamar Canal and Irrigation Company, Manval Canal and Irrigation Company, the Hyde Mutual Ditch Company; the Amity Mutual Irrigation Company, individually; Jake O. Broyles, individually;

the Chilili Ditch Company; the Fort Lyon Canal Company; Stanley Barron, Jr.; Southeastern Colorado Water Conservancy District; and Colorado State Board of Land Commissioners, Appellees.

No. 92SA236.

Supreme Court of Colorado, En Banc.

Sept. 27, 1993.

M.E. MacDougall, Julianne M. Woldridge, Colorado Springs, for appellant.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Patricia S. Bangert, Deputy Atty. Gen., Jennifer L. Gimbel, First Asst. Atty. Gen., Denver, for appellee Steven J. Witte, Division Engineer, Water Div. No. 2.

Shinn Lawyers, Carl M. Shinn, Wendy S. Shinn, Lamar, for appellees Dist. 67 Ditch Ass'n and its members, the Amity Mut. Irrigation Co. and Jake O. Broyles.

Lefferdink & Bullock, John S. Lefferdink, Lamar, for appellee The Fort Lyon Canal Co.

No appearance for the following appellees: The Chilili Ditch Co., Stanley Barron, Jr., Southeastern Colorado Water Conservancy Dist. and Colorado State Bd. of Land Com'rs.

Justice LOHR delivered the Opinion of the Court.

This appeal arises out of an application filed by Purgatoire River Water Conservancy District (Purgatoire) for a determination of a water right for storage in the Silt Control Section of Trinidad Reservoir.[1] The District Court for Water Division 2 (water court) held trial on the application on April 21, 1992, at which time certain parties opposing Purgatoire's application moved to limit the evidence that Purgatoire could present as proof that it created this absolute water right.[2] The water court granted the motion on the basis that it had been determined in previous judicial proceedings that Purgatoire had abandoned a conditional water right for storage in the reservoir and the conditional right had the same date of appropriation as the right Purgatoire was asserting in its present application. Concluding that Purgatoire could not rely on an appropriation date of an abandoned conditional water right to establish a new water right, the water court ruled that it would not consider evidence of an appropriation prior to May 1, 1989, the date on which Purgatoire was deemed to have abandoned its earlier conditional water right. Because Purgatoire could produce no evidence of facts occurring after that date to prove a new appropriation, the court ordered that the application for a determination of a water right be dismissed. We conclude that the water court properly limited the evidence that Purgatoire could present to events that occurred after the conditional water right was abandoned, and therefore affirm the judgment of the water court dismissing Purgatoire's application.

---

1. Our jurisdiction over this case is grounded on § 13–4–102(1)(d), 6A C.R.S. (1987), under which appeals from final judgments of district courts in "[w]ater cases involving priorities or adjudications" are excluded from the jurisdiction of the court of appeals. *See also* C.A.R. 1(a)(2).

2. A "water right" is frequently referred to as an absolute water right so as to distinguish it from a "conditional water right." *See* section II, *infra,* for definitions of those terms.

## I

On December 5, 1989, Purgatoire filed an application for a determination of a water right to store 39,300 acre-feet of water in what is known as the Silt Control Section of Trinidad Reservoir. Trinidad Reservoir is part of a multi-use project (the Trinidad Project) authorized by Congress in 1958 for flood control, reclamation, and recreation purposes.[3] Located on the Purgatoire River near the city of Trinidad, Colorado, the reservoir has a total storage capacity of 114,500 acre-feet, of which approximately 39,000 acre-feet is allocated to the Silt Control Section for the joint uses of controlling silt accumulations and retaining flood waters for irrigation. Trinidad Reservoir is operated in accordance with a set of Operating Principles[4] which state that they are designed "to secure the greatest practicable benefits from the regulation and use of the flows of the Purgatoire River consistent with the laws and policies of the State of Colorado and of the United States including the Arkansas River Compact [§§ 37–69–101 to –106, 15 C.R.S. (1990)]." One provision of these principles, the importance of which will become apparent in the course of our discussion, states that water may be stored in the reservoir's Silt Control Section only at such times as John Martin Reservoir is reasonably expected to spill and only in such amounts as John Martin Reservoir would spill.[5]

It is Purgatoire's December 5, 1989, application for determination of a right to store water in this Silt Control Section that underlies the appeal before us. The issues concerning the merits of that application center on the effect of an order of the water court canceling a conditional storage right that Purgatoire had previously obtained. Therefore, we must set forth the circumstances surrounding that cancellation order to provide the necessary background for addressing Purgatoire's present application.

In February of 1971 Purgatoire applied to the water court for a determination of a conditional water right to store 39,300 acre-feet of water in the Silt Control Section. Purgatoire claimed in that application that it had initiated an appropriation for the storage right in May of 1950 and that it sought to develop the right by storing water and applying it to beneficial use for domestic, irrigation, and municipal purposes. On April 27, 1972, the water court approved Purgatoire's application and therefore entered a judgment and decree confirming that Purgatoire had established this conditional water right. One provision of the decree incorporated the condition set forth in the Operating Principles that water could be stored in the Silt Control Section of the reservoir only at times when John Martin Reservoir is reasonably expected to spill. The decree also provided that Purgatoire must apply the water that it was conditionally decreed to a beneficial use within a reasonable time and must file with the water court biennially an application for a finding of reasonable diligence for as long as it sought to maintain the right or until there was a determination that it had made the right absolute by completing its appropriation.[6]

---

3. *See* H.R.Doc. No. 325 P.L. 85–500, 84th Cong., 2nd Sess. For a description of the structures that make up the Trinidad Project, *see Purgatoire River Water Conservancy Dist. v. Kuiper,* 197 Colo. 200, 593 P.2d 333 (1979), and *Purgatoire River Water Conservancy Dist. v. Highland Irrigation Co.,* 194 Colo. 510, 574 P.2d 83 (1978).

4. The Operating Principles exist as part of a February 10, 1967, contract that Purgatoire, as a representative of those in the district who benefit from the operation of the irrigation portion of the Trinidad Project, entered into with the United States. The contract provides for Purgatoire's use of the project for irrigation and also sets forth Purgatoire's obligation to repay the United States for the construction, operation, and maintenance costs allocated to this use.

5. John Martin Reservoir is a principal feature of the Arkansas River Compact, §§ 37–69–101 to –106, and is part of a comprehensive plan to control floods and develop water resources in the Arkansas River Basin. Because John Martin Reservoir contains over 300,000 acre-feet of storage space and seldom spills, waters can be stored in the Silt Control Section of Trinidad Reservoir at very limited times, essentially during times of floods.

6. The court ordered Purgatoire to apply for biennial findings of reasonable diligence pursuant

For several years, Purgatoire duly filed the requisite applications to maintain its conditional water right and obtained decrees from the water court finding that it had acted with reasonable diligence in developing the right. However, because of the limited quantities of water available in the streams and the condition that John Martin Reservoir reasonably be expected to spill before there could be storage in the Silt Control Section, it was not until 1985 that Purgatoire was able to store water in that section, and not until June of 1987 when it stored the full 39,300 acre-feet that was conditionally decreed.[7]

Subsequent to this storage, Purgatoire's next application for a finding of reasonable diligence was due on April 30, 1989. Purgatoire failed to meet this deadline, however, and did not file an application until May 11, 1989. On that date, Purgatoire applied both for a finding that it had acted with reasonable diligence in developing a water right and for a determination that it had completed the appropriation by virtue of its

storage and application of water to beneficial use, thereby making its conditional right absolute. However, based on Purgatoire's failure to file the requisite application for a finding of reasonable diligence within the prescribed time, the water court entered an order on January 22, 1990, canceling the conditional water storage right. We upheld this order in *Fort Lyon Canal Co. v. Purgatoire River Water Conservancy Dist.*, 818 P.2d 747, 750 (Colo.1991) (hereinafter *Purgatoire I*), and stated that Purgatoire's failure to meet the filing deadline "constitute[d] an abandonment of [the] conditional water rights and mandate[s] their cancellation."[8] *See* § 37-92-301(4), 15 C.R.S. (1990) (if owner or user of conditional water right fails to file an application for a finding of reasonable diligence within the prescribed time, "said conditional water right shall be considered abandoned"); *Broyles v. Fort Lyon Canal Co.*, 695 P.2d 1136 (Colo.1985) (applying that statute); *Town of De Beque v. Enewold*, 199·Colo. 110, 606 P.2d 48 (1980) (same).

---

to § 148-21-18, 7 C.R.S. (1963 & 1971 Supp.). Because this statute was later amended to require only quadrennial findings of reasonable diligence, *see* ch. 443, sec. 2, § 148-21-18, 1973 Colo.Sess.Laws 1523, 1523, the court entered a judgment and decree on December 16, 1976, changing Purgatoire's obligation and requiring that, thereafter, Purgatoire file its applications on a four-year basis.

At the present time, the requirements for obtaining findings of reasonable diligence are set forth in § 37-92-301(4), 15 C.R.S. (1990). Subsection (a) of that section provides that

[i]n every sixth calendar year after the calendar year in which a water right is conditionally decreed, or in which a finding of reasonable diligence has been decreed, the owner or user thereof, if he desires to maintain the same, shall file an application for a finding of reasonable diligence, or said conditional water right shall be considered abandoned....

7. On January 21, 1988, the Water Referee for Water Division 2 entered an Amended Ruling—later adopted as a judgment of the water court—pursuant to an application that Purgatoire had filed to make its conditional water right absolute based upon its storage of water in 1985 and 1987. In that ruling, the referee found that "at least the conditionally decreed amount of 39,-300 acre-feet was in the Silt Control Section on June 30, 1987." Based on the additional finding, however, that none of this water had yet been released and put to beneficial use, the referee denied Purgatoire's application to make

its conditional right absolute but found that Purgatoire had shown reasonable diligence in developing its water right.

In prosecuting the December 5, 1989, application that gave rise to the present appeal, Purgatoire asserted that the water was applied to beneficial use by the end of the 1989 irrigation season and that its appropriation was thereby completed. The parties opposing Purgatoire's application do not dispute that the water has been stored and applied to a beneficial use.

8. After the water court ordered the cancellation of Purgatoire's conditional water storage right, Purgatoire sought relief from that order by filing a motion under C.R.C.P. 60(b)(5). As grounds for relief, Purgatoire asserted that it was entitled to the benefit of a 1990 legislative amendment that changed the filing requirement from every four years to every six years, *see* ch. 269, sec. 1, § 37-92-301, 1990 Colo.Sess.Laws 1625, 1625, and that it had submitted its application within the time period required by that amendment. The water court agreed with this argument and consequently entered a July 17, 1990, order reinstating Purgatoire's conditional water right. In *Purgatoire I*, 818 P.2d at 752, we determined that the amendment did not apply retroactively "to resurrect a water right considered abandoned and canceled by judicial order for failure to timely file an application for finding of reasonable diligence," and therefore vacated the water court's reinstatement of Purgatoire's conditional water right.

During the pendency of the proceedings that resulted in cancellation of its conditional storage right, Purgatoire submitted the December 5, 1989, application for a determination of a water right that is now before us, seeking confirmation that it had completed its appropriation and thereby had established an absolute right to store 39,300 acre-feet of water in the Silt Control Section of the Trinidad Reservoir. Purgatoire asserted in that application that it initiated the appropriation in May 1950 and that the water court's 1972 judgment and decree granting Purgatoire's application for a determination of a conditional water right conclusively established this as the date of initiation. Purgatoire also asserted that the water right came into priority between March 7, 1985, and December 5, 1989, the date on which it submitted its application, and that it applied the water to beneficial use between June 30, 1987, and that application date. Several entities, including The Fort Lyon Canal Company and District 67 Ditch Association (collectively, "Opposers") filed statements of opposition to Purgatoire's application,[9] and the case proceeded to trial in the water court on April 21, 1992.[10]

At trial, each of the parties made opening statements, after which the Opposers made oral motions in limine requesting the water court to limit the evidence that Purgatoire could present as proof that it had established a water right. Fort Lyon sought to limit the admission of evidence to facts that occurred after April 30, 1989, the date on which Fort Lyon contended that Purgatoire abandoned its conditional water right, whereas the other opposers[11] sought

to limit the evidence to facts that occurred after December 5, 1989, the date that Purgatoire applied anew for a determination of a water storage right. In support of their motions in limine, the Opposers contended that the water right that Purgatoire was attempting to adjudicate was the same right that was determined to have been abandoned in *Purgatoire I*. Arguing further that Purgatoire could not rely on evidence of an abandoned right to prove the initiation and completion of a new appropriation, they asserted that any matters pertaining to Purgatoire's intent in 1950 to develop a water right as well as the eventual storage and application of water to beneficial use by which Purgatoire alleged that the right had become absolute were irrelevant and therefore inadmissible in the proceeding.

Purgatoire admitted at trial that the only evidence it had to offer as proof of its asserted water right was evidence of facts that occurred prior to April of 1989. Because of insufficient water in the streams, John Martin Reservoir had not been reasonably expected to fill after that date so as to allow Purgatoire to store water in the Silt Control Section of Trinidad Reservoir. Thus, Purgatoire conceded that it could not show a new appropriation if the water court granted the Opposers' motions to limit it to proof of facts that occurred after the abandonment of its conditional water right. Purgatoire took the position, however, that it was not attempting to revive the abandoned conditional right but, rather, was seeking to adjudicate a different right. It thus argued that it should not be limited

9. District 67 Ditch Association filed its statement of opposition in both its individual capacity and as a representative of its members. The Amity Mutual Irrigation Company and Jake O. Broyles, each acting individually, joined in this statement of opposition. In addition, on January 28, 1992, the water court granted a motion by The Chilili Ditch Company to intervene in this action and also allowed that company to file a statement of opposition. For convenience, all of these opposing entities will be included in our references to the Opposers.

10. The delay between the filing of Purgatoire's application in 1989 and the trial date appears to have been due to Purgatoire's decision not to

prosecute its application until it obtained a definitive ruling on whether it was entitled to a decree pursuant to its May 11, 1989, application to make its conditional right absolute. We draw this conclusion from a statement that Purgatoire made in its December 1989 application indicating that it would withdraw the application if it obtained the final decree sought in that earlier case. After our decision in *Purgatoire I*, Purgatoire activated its present application and proceeded to trial.

11. Included in this reference are District 67 Ditch Association, The Amity Mutual Irrigation Company, and Jake O. Broyles.

in its presentation of evidence even though the facts that it asserted as proof of the water right also formed the basis for the abandoned conditional water right.

The water court rejected Purgatoire's argument and granted the Opposers' motions. The court stated:

Even though the water right applied for in this [case] is not the same right that was conditionally decreed in Case No. W–130 [the case in which Purgatoire was decreed its conditional water right], it is, nevertheless, the same appropriation date being claimed, May 31, 1950. In [*Purgatoire I,*] it is clear that there was an abandonment of the conditional right.... Upon abandonment, the water originally decreed belongs to the stream, and it is subject to appropriation by others. The appropriation date of an abandoned right cannot be relied upon as evidence of an appropriation in a subsequent case.[12]

Based on Purgatoire's conceded inability to present evidence of facts that occurred after its abandonment of the conditional right, the Opposers moved to dismiss Purgatoire's application for a water right, and the water court granted the motion.[13]

Purgatoire appealed, seeking our review of the water court's decision to limit the evidence that could be presented to that which pertained to facts that occurred on or after May 1, 1989, and to dismiss Purgatoire's December 5, 1989, application for a determination of a water right. Based on

our conclusion that one may not revive a previously abandoned conditional water right by using facts that gave rise to that right in order to establish a new appropriation, we agree with the water court's limitation of the evidence it would consider in this case and therefore affirm the judgment following from its order granting the Opposers' motion in limine and their motion to dismiss Purgatoire's application.

## II

To review the propriety of the water court's orders and to assess the effect of Purgatoire's abandonment of the conditional storage right to which it obtained a decree in April 1972 on Purgatoire's December 1989 application for a determination of an absolute water right, we must first consider the legal principles on which water rights and conditional water rights are based. We therefore discuss those principles insofar as they pertain to our analysis and then address each of Purgatoire's arguments that the water court erred in limiting the evidence that could be presented at trial and in consequently dismissing the application.

■■■ A water right, sometimes referred to as an absolute water right, is defined by statute as "a right to use in accordance with its priority a certain portion of the waters of the state by reason of the appropriation[14] of the same." § 37–92–103(12), 15 C.R.S. (1990). In contrast, a conditional water right is "a right to per-

---

**12.** The water court refused to admit any evidence of an appropriation that occurred prior to May 1, 1989, based on its finding that "[t]he conditional right would still have been alive on April 30."

**13.** After the water court granted the Opposers' motions to limit Purgatoire's presentation of evidence, Purgatoire made an offer of proof to show the evidence that it would have presented to prove its water right. This evidence included records of diversion for silt control storage in Trinidad Reservoir from 1985 through 1991, which Purgatoire admitted "did not show any diversions [ (storage) ] ... on or after May 1, 1989." Purgatoire also offered the 1972 judgment and decree in which it was originally decreed the conditional water right that it later abandoned, subsequent decrees showing that it

acted with reasonable diligence in developing that right, various government documents pertaining to the construction and operation of Trinidad Reservoir, as well as exhibits and testimony showing that water had been stored in the Silt Control Section in 1985 and 1987 and applied to a beneficial use by the end of 1989. Because all of this evidence pertained to matters that had occurred prior to May 1, 1989, Purgatoire's counsel conceded that "based on the Court's previous in limine ruling, it is obvious to me that I failed to prove an appropriation...."

**14.** "Appropriation," in turn, is defined as "the application of a specified portion of the waters of the state to a beneficial use pursuant to the procedures prescribed by law; ..." § 37–92–103(3)(a).

fect a water right with a certain priority upon the completion with reasonable diligence of the appropriation upon which such water right is to be based." § 37–92–103(6). To establish a conditional water right, one must take a "first step" toward the appropriation of a certain amount of water, that is, the prospective appropriator must concurrently intend to appropriate water and perform sufficient overt acts in furtherance of that intent. *Public Serv. Co. of Colo. v. Board of Water Works*, 831 P.2d 470, 476 (Colo.1992); *City of Thornton v. City of Fort Collins*, 830 P.2d 915, 924–25 (Colo.1992); *Public Serv. Co. v. Blue River Irrigation Co.*, 753 P.2d 737, 739 (Colo.1988). Then, upon completion of the appropriation with reasonable diligence through the application of water to beneficial use, the conditional water right will mature into a water right and the appropriator will have an absolute right based on an appropriation that relates back to the date of the first step. *City of Aspen v. Colorado River Water Conservation Dist.*, 696 P.2d 758, 761 (Colo.1985). Conditional water rights therefore encourage the development of water resources in that they allow prospective appropriators to initiate appropriations and complete the financing, engineering, and construction aspects of their projects, secure in the knowledge that upon diligent pursuit and development of the appropriations their conditional rights will become absolute when water is ultimately applied to beneficial use. *City of Thornton*, 830 P.2d at 924; *Blue River Irrigation Co.*, 753 P.2d at 739.

In the present case, Purgatoire concedes that the absolute water right it sought to have determined in its December 1989 ap-

plication is based on the same intent and overt acts that gave rise to its previously abandoned conditional water right. Purgatoire contends, however, that the water court erred in excluding evidence of such intent and overt acts as proof of the water right claimed in that application and advances two closely related arguments to support its position. First, Purgatoire asserts that because the abandonment of its conditional water right resulted only from a failure to file a timely application for a finding of reasonable diligence, the abandonment should not have the effect of precluding proof of an absolute water right by use of the appropriative facts upon which the conditional right was based. Second, Purgatoire argues that the water right that it sought to have determined in this case is a right different from the abandoned conditional right regardless of whether the intent and overt acts underlying the rights are identical, and that the prior decree of abandonment should therefore not prevent establishment of this different right. We address each of these arguments in turn.

A

In its first argument, Purgatoire asserts that the abandonment of its conditional water right should not preclude it from relying on the appropriative acts and intent on which that right was based to establish a new water right. Rather, Purgatoire argues, the effect should simply be the loss of the administrative priority to which it would have been entitled upon maturity of its conditional water right, based on the date that the original application for a determination of that conditional right was filed.[15] We disagree.

**15.** The "priority" of a water right or conditional water right refers to the "relative seniority of [the] right in relation to other water rights and conditional water rights deriving their supply from a common source." § 37–92–103(10). A priority date is established by judicial decree and is based principally upon the calendar year in which an application for a determination of an absolute or conditional water right is filed. The priority system is prescribed and explained in § 37–92–306, as follows:

> With respect to each [water] division described in section 37–92–201, the priority date

awarded for water rights or conditional water rights adjudged and decreed on applications for a determination of the amount and priority thereof filed in such division during each calendar year shall establish the relative priority among other water rights or conditional water rights awarded on such applications filed in that calendar year; but such water rights or conditional water rights shall be junior to all water rights or conditional water rights awarded on such applications filed in any previous calendar year and shall also be junior to all priorities awarded in decrees

■ In *Southeastern Colo. Water Conservancy Dist. v. Twin Lakes Assocs.*, 770 P.2d 1231, 1238 (Colo.1989), we discussed the principles governing the effect of abandonment of an absolute water right and stated that when such a right is abandoned "the water originally decreed belongs to the stream and is subject to appropriation by others." *See also Gardner v. State of Colo.*, 200 Colo. 221, 226, 614 P.2d 357, 360 (1980) ("A decree of abandonment terminates the water right and divests the owner of any interest in it, thereby rendering the water once again subject to appropriation by the public under Article XVI, Section 5, of the Colorado Constitution." [16]); *Rocky Mountain Power Co. v. White River Elec. Ass'n.*, 151 Colo. 45, 51, 376 P.2d 158, 161 (1962) (same). Because the abandonment of a water right effectively returns to the stream water that could otherwise have been diverted by exercise of that right, we made clear in *Twin Lakes* that

> [i]f the former owner of an abandoned water right initiates a new appropriation, the priority of the new water right will be based on the date of the new appropriation. Any attempt by the former owner to claim a priority relating back to the priority date of the former right is of no avail.

*Twin Lakes*, 770 P.2d at 1238. Thus, upon abandonment of a water right, the previous owner of the right is placed in the same position as any other prospective appropriator who wishes to develop a conditional or absolute water right; although free to initiate a new appropriation, the previous owner may not assert an entitlement to water based on the appropriative acts and intent that gave rise to the abandoned right. *See Farmers Reservoir and Irrigation Co. v. Fulton Irrigation Ditch Co.*, 108 Colo. 482, 486, 120 P.2d 196, 199 (1941) ("After abandonment becomes an accomplished

fact, the attempt to exercise the abandoned right differs in no respect from an attempt by one who never had a right....").

Purgatoire contends, however, that it should be able to prove that it created a new water right by relying on the acts and intent upon which its abandoned conditional right had been based and that the result of that abandonment should be only that the newly created right will be administered with a junior priority because the application for a decree determining that right was filed at a later time. Attempting to distinguish the cases cited above on the basis that they all involved abandonment of absolute water rights, Purgatoire asserts that the principles contained in those cases should not extend to abandonment of conditional water rights and supports this argument by pointing to the differences in the elements of abandonment in the two situations. Specifically, Purgatoire argues that because an absolute water right cannot be abandoned in the absence of an intent to relinquish the right, whereas abandonment of a conditional right may result from mere inadvertence, such as an oversight in failing to apply for a finding of diligence within the time required, the consequences of abandonment should be less severe in this latter circumstance. We disagree.

Purgatoire correctly notes that abandonment of a conditional water right, in contrast to abandonment of a water right, does not require an intent to abandon. Section 37–92–103(1) defines "[a]bandonment of a conditional water right" as a "termination" of the right "as a result of the failure to develop with reasonable diligence the proposed appropriation upon which such water is to be based." In addition, the General Assembly has prescribed particular circumstances that will result in

entered in proceedings which were pending on such date; [with certain exceptions and special provisions concerning water rights involving diversions by means of wells].

16. Article XVI, Section 5, of the Colorado Constitution states that

[t]he water of every natural stream, not heretofore appropriated, within the state of Colorado, is hereby declared to be the property of the public, and the same is dedicated to the use of the people of the state, subject to appropriation as hereinafter provided.

Section 6 of that same article provides further that "[t]he right to divert the unappropriated waters of any natural stream to beneficial uses shall never be denied." Colo. Const. art. XVI, § 6.

abandonment of a conditional water right. For instance, under section 37–92–301(4)(a), if the owner or user of a decreed conditional water right fails to file an application for a finding of reasonable diligence within the period prescribed by statute and judicial decree, the conditional water right "shall be considered abandoned." *See supra* note 6. In effect, the legislature equated failure to apply for a finding of reasonable diligence within the prescribed time to a "failure to develop with reasonable diligence." *De Beque v. Enewold,* 199 Colo. at 117, 606 P.2d at 52. In contrast, "[a]bandonment of a water right" means a "termination" of all or part of the right "as a result of the intent of the owner thereof to discontinue permanently the use of all or part of the water available thereunder." § 37–92–103(2). As we stated in *De Beque v. Enewold,* 199 Colo. at 117, 606 P.2d at 52, the essential difference is "the element of intent, which must be shown before an abandonment of an absolute water right can be decreed, but which is not necessary in establishing the abandonment of a conditional water right."

 Although we agree with Purgatoire that the requirements for abandonment of these two types of rights differ, we are unpersuaded that the effect of abandonment on the ability to establish a new right differs depending on whether the abandoned right was absolute or conditional. Because water that is the subject of a conditional water right that has been made absolute is deemed appropriated as of the date the right was first initiated, *see City of Thornton,* 830 P.2d at 924, that water is unavailable for appropriation by others as of that time just as if it had initially been the subject of an absolute right.[17] Accordingly, an abandonment of the conditional right effectively augments the stream by making water available for appropriation in the same manner as abandonment of an absolute water right. Thus, so as to protect the right of the public under Article XVI, Sections 5 and 6, of the Colorado Constitution, to appropriate available water, *see supra* note 16, the principles set forth in *Twin Lakes* must apply to prevent the former holder of an abandoned conditional water right from asserting a new right based on the facts of appropriation underlying its abandoned right. We therefore reject Purgatoire's argument that the conditional nature of its previously abandoned right warrants distinguishing this case from cases such as *Twin Lakes,* in which we determined that abandonment of a water right precludes reliance on the acts and intent that gave rise to that right as a basis for establishing a new right.[18]

17. Relying on *Farmers Reservoir and Irrigation Co.,* 108 Colo. at 486, 120 P.2d at 199, which referred to an unperfected conditional water right as an "inchoate right," Purgatoire takes the position that abandonment of such a right does not augment the stream with any amounts of water that otherwise could have been diverted. Its argument is unpersuasive, however, as we have made clear since the time of that case that conditional water rights, like water rights, are vested property rights. *See, e.g., Rocky Mountain Power Co.,* 151 Colo. at 53, 376 P.2d at 162 ("one who is entitled to a conditional decree defining his right to water for future application to use has a vested right").

18. The language of the statutes adds further support to our conclusion that no distinction exists between the effect of abandonment of an absolute water right and abandonment of a conditional water right. Although the requirements for "abandonment" in each circumstance differ, the consequence is described by the identical term "termination" for both water rights and conditional water rights. *See* §§ 37–92–103(1) and (2).

Even if we were to accept Purgatoire's proposed distinction, however, and hold that the principle enunciated in *Twin Lakes* does not apply where a conditional water right rather than a water right is abandoned, we are not persuaded that the distinction would require a reversal of the water court's limitation of the evidence that Purgatoire could present at trial.

When Purgatoire filed its May 11, 1989, application for a finding of reasonable diligence, it also sought a determination that it had completed the appropriation and thereby established a water right. Purgatoire supported this claim by asserting that in 1987 it stored the full 39,300 acre-feet of water that it was conditionally decreed and that it applied the water to a beneficial use by the end of 1989. Pursuant to our decision in *Purgatoire I,* 818 P.2d at 752, the trial court's order canceling Purgatoire's conditional water right was reinstated, and Purgatoire's application for a determination of a water right was dismissed accordingly. In light of the disposition of the application in those proceedings, Purgatoire is now barred by the principles of res judicata from asserting a claim that

## B

■ In its second argument, Purgatoire contends that it is not attempting to revive a previously abandoned right contrary to the principles of *Twin Lakes* but, rather, is seeking confirmation of a right different from the right that it previously abandoned. Specifically, Purgatoire argues that the absolute water right asserted in its December 1989 application differs from the abandoned conditional right because by operation of section 37–92–306, *see supra* note 15, that absolute right would be administered with a priority junior to that by which the abandoned right would have been administered.[19] Purgatoire would also have us distinguish the rights on the basis that the abandoned right was only conditional whereas the right now being claimed is allegedly absolute. Because of these differences, Purgatoire contends that it established a new water right and therefore should not be limited in the evidence it could present to prove that right. We are unpersuaded, however, that these administrative and classification distinctions show that Purgatoire is asserting a right different from the right it previously abandoned. Because the record confirms that the water right claimed in Purgatoire's December 1989 application is based on the same acts and intent that gave rise to its abandoned conditional right, we can only conclude that Purgatoire is attempting to resurrect that prior right in a manner that contravenes the principles of *Twin Lakes*. In reaching this conclusion, we first reject Purgatoire's argument that a difference in priority dates that are established by judicial decrees for purposes of administering particular rights within the state's priority system provides

a valid basis for distinguishing between the rights. A judicial decree confirming a conditional or absolute water right is not the source of the right but is simply a determination that a right has been established. *U.S. v. Bell,* 724 P.2d 631, 642 (Colo.1986) ("Water rights are obtained by a combination of acts and intent constituting appropriation and are not dependent upon adjudication."). Because conditional and absolute water rights arise on the basis of valid appropriations or initiations of appropriations and continue to exist regardless of whether they are ever judicially confirmed, an administrative priority based upon the date that a judicial decree is applied for does not serve as a means of defining the right alleged and therefore cannot serve as a basis for distinction.

■ Nor can the conditional versus absolute status of a water right provide a ground for distinguishing between rights that arise from the same intent and overt acts initiating an appropriation. An absolute water right is not a right separate and distinct from the conditional right from which it originates. Rather, a conditional water right matures into a water right upon diligent completion of the appropriation by application of water to beneficial use. § 37–92–103(6). Because, as in this case, the facts underlying the appropriation are the same regardless of whether the right remained in a conditional status or became absolute, Purgatoire's proposed distinction fails.

■ The record shows that the water right sought to be determined in the December 1989 application is based on the same overt acts and intent that gave rise to

it established a water right based on the May 1950 initiation of an appropriation and the eventual completion of the appropriation in 1987 and 1989. *See City and County of Denver v. Block 173 Assocs.,* 814 P.2d 824, 830 (Colo. 1991) (Res judicata will act as a bar to claims actually decided in prior proceedings as well as to those that should have been but were not raised); *City and County of Denver v. Consolidated Ditches Co.,* 807 P.2d 23, 32 (Colo.1991) (same).

19. Purgatoire applied for its conditional water right in 1971 and, thus, upon completing its

appropriation would have been entitled to have the perfected right administered with priority over all conditional and absolute water rights adjudicated pursuant to applications filed in later years. *See* § 37–92–306, *supra* note 15. In contrast, the right asserted in Purgatoire's December 1989 application would be administered as a right that is eighteen years junior to the right Purgatoire abandoned because of the eighteen year difference between the dates of filing the two applications. *Id.*

the conditional right that Purgatoire previously abandoned. As set forth in that application, Purgatoire sought confirmation of a right to store 39,300 acre-feet of water in the Silt Control Section of Trinidad Reservoir, the same amount and storage location provided for in the conditional decree. In addition, not only did Purgatoire assert that it initiated this water right in May 1950, the date on which it initiated its abandoned conditional right, but it relied upon the conditional decree that governed that previous right as conclusively establishing this as the date of initiation. Moreover, Purgatoire claimed that the alleged water right "came into priority ... in accord with the terms of the Judgment and Decree in Case W–130 [the case in which it obtained and later lost its conditional water right]," and supported this by citing its storage of water in 1987 and subsequent application of that water to beneficial use. Because these are the same facts of appropriation on which Purgatoire's abandoned conditional right had been based, we conclude that the right Purgatoire asserted in its December 1989 application is the same right that it lost by failing to file a timely application for a finding of reasonable diligence.

### III

Following the principle set forth in *Twin Lakes,* that a previous owner of an abandoned water right may not rely on its prior appropriation to establish a new right, the evidence that Purgatoire sought to admit at trial could not be used to show the creation of a new water right. Giving effect to this principle, we conclude that the water court correctly limited the evidence that Purgatoire could present to evidence that pertained to facts occurring after Purgatoire abandoned its conditional water right.[20] In addition, because Purgatoire

20. We wish to make clear, however, that it is the facts that gave rise to the initiation of Purgatoire's abandoned conditional right that cannot now be asserted as proof of a new right. Neither the principles enunciated in *Twin Lakes* nor our holding in the present case would preclude Purgatoire from asserting a new appropriation by showing that it initiated an appropriation with an intent different from the intent that existed in May 1950 or with acts different from

could present no evidence of an appropriation after that date, we also conclude that the court correctly dismissed the December 1989 application for a determination of a water storage right.

Judgment affirmed.

those upon which its abandoned conditional right was based.

In fact, Purgatoire indicated in oral argument that it has a separate action for determination of a conditional water right pending in which it is claiming that it initiated a new appropriation by taking a requisite first step that differs from the first step upon which the abandoned condition right was founded.