USI PROPERTIES EAST, INC., a Delaware corporation; and Diamond Bar T Limited Liability Company, a Colorado limited liability company, d/b/a Diamond Bar T Joint Venture, Plaintiffs–Appellants,

v.

Hal D. SIMPSON, State Water Engineer; Orlyn J. Bell, Water Engineer, Water Division Five; The City and County Of Denver, Colorado; and Cyprus Climax Minerals, Defendants–Appellees.

No. 96SA100.

Supreme Court of Colorado,
En Banc.

May 27, 1997.

Stone & Associates, P.C., Patricia Jo Stone, Denver, for Plaintiffs–Appellants.

Patricia L. Wells, Michael L. Walker, Casey S. Funk, Amy Moore Cavanaugh, Denver, for Defendant–Appellee the City and County of Denver, acting by and through its Board of Water Commissioners.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Joseph C. Smith, Jr., Deputy Attorney General, Lee E. Miller, First Assistant Attorney General, Natural Resources Section, for Defendants–Appellees Hal D. Simpson, State Water Engineer and Orlyn J. Bell, Water Engineer, Water Division Five.

No appearance by or on behalf of Defendant–Appellee Cyprus Climax Minerals.

Justice MARTINEZ delivered the Opinion of the Court.

This appeal from the Water Court for Water Division No. 5 concerns the interpretation of a stipulation regarding the water rights of the applicants-plaintiffs-appellants, USI Properties East Inc., Diamond Bar T Limited Liability Company and Diamond Bar T Joint Venture (collectively, applicants or USI) and the objectors-defendants-appellees, the City and County of Denver (Denver) and Cyprus Climax Minerals (Climax). The water court denied and dismissed USI's motion for declaratory judgment, which the water court treated as a motion *in limine,* and granted Englewood's motion for summary judgment. Applying general principles of contract law, we determine that the plain terms of the stipulation in question limited the stipulation's application to Beaver Creek. USI's motion *in limine* was properly denied and the City of Englewood's motion for summary judgment was properly granted. We affirm the order of the water court.

### I.

Several cases have been filed regarding the water rights at issue here. We will briefly identify those cases significant to the case before us and then discuss their relevant history.[1] First, Case No. 91CW211, filed by the applicants in December 1991, sought an alternate point of diversion for the Diamond Bar T Ditch No. 3 for the purpose of irrigation. In November 1994, Case No. 94CW264 was filed by the applicants for an alternate point of diversion and for additional beneficial uses at the new point of diversion. In 1995, Case No. 95CW65 was filed by the applicants requesting the water court to make a determination regarding the subordination of Denver's, Englewood's, and Climax' water rights pursuant to the stipulation at issue here.

Although the history of these cases is complicated and lengthy, it is useful to understand the context of the dispute before us. Raymond D. Sloan, predecessor in interest to USI, owned the Diamond Bar T Ranch. In 1951, Sloan diverted water from Beaver Creek to supplement the flows of the Diamond Bar T No. 2 Ditch, although he did not have a decreed right to divert from Beaver Creek. However, in 1971, in Case No. C.A. 1430, Sloan had a pending claim for the Sloan No. 1 Ditch water right on Beaver Creek with an appropriation date of July 31, 1951.

In 1955, Englewood purchased conditional water rights on Cabin and Meadow Creeks, and other tributaries of the Fraser River, known as the Cabin–Meadow Creek System. Englewood sought a proposed point of diversion on Beaver Creek for its Cabin-Meadow Creek System. Subsequently, Englewood, Denver, and Climax entered into various agreements regarding the Cabin–Meadow Creek System water. In 1970, Englewood filed an application for Biennial Finding of Reasonable Diligence for the Cabin–Meadow Creek System in Case No. W–40. This application was opposed by Sloan and a group of landowners known as Grand River Environmental Action Today, Inc. (GREAT).

On March 15, 1971, Sloan, GREAT, Denver, Englewood and Climax entered into a

---

1. The order of the water court referred to the complicated history of these water rights without setting forth the specific history of the cases. Therefore, the facts set forth in this opinion are derived from the various orders and pleadings filed in these cases, rather than specific findings of the water court.

stipulation in order to resolve the objections raised by Sloan and GREAT. This oral stipulation was read into the record of Case No. W–40, Englewood's diligence proceeding. Later, the stipulation (the W–40 Stipulation) was reduced to writing and filed with and approved by the water court. As written, the W–40 Stipulation was entered on April 12, 1971, effective March 15, 1971. The W–40 Stipulation provided in pertinent part:

> 8. Englewood, Denver and Climax agree that they and their successors or assigns shall never make a call[ [2]] on the waters of Beaver Creek (or Little Beaver Creek, the same being known by both names) to supply any of their water right priorities in the Fraser River Basin or for any other purpose if such call would prevent the owner or owners of the following described water rights from making maximum use of the water claimed under said rights:
>
> (a) Sloan No. 1 Ditch *
>
> (b) Diamond Bar Tee No. 3 Ditch *
>
>   * As they have been claimed in Civil Action No. 1430 in the District Court of Grand County, Colorado Water District No. 51.
>
> (c) Diamond Bar Tee No. 1 Ditch * *
>
> (d) Diamond Bar Tee No. 4 Ditch * *
>
>   * * As they have been claimed in Civil Action No. 1768 in the District Court of Grand County, Colorado, Water District No. 51.

This agreement shall apply regardless of the priority date or dates finally awarded to said claims. Denver will withdraw its statement of opposition to the Sloan No. 1 Ditch in Case No. 1430 in the District Court of Grand County, Colorado, and Denver, Englewood and Climax will not challenge these rights.

After agreeing to the above stipulation, Sloan and GREAT withdrew their objections in the W–40 diligence proceeding for the Cabin–Meadow Creek System.

However, in 1991, water rights that were irrigating Diamond Bar T Ranch through the Diamond Bar T Ditch No. 2 were sold. In order to obtain alternate irrigation water for the ranch, the applicants filed Case No. 91CW211 for an alternate point of diversion and new place of use for Diamond Bar T Ditch No. 3 in the amount of 5.0 cubic feet per second (cfs).[3] In Diamond Bar T Ditch No. 3 was a conditional water right which had not been perfected and which the record implies never irrigated the ranch. Englewood filed an Objection, but Denver and Climax did not.

Subsequently, the application in Case No. 91CW211 was decreed for the alternate point of diversion and place of use for Diamond Bar T No. 3 Ditch for irrigation. Englewood and USI then executed a second stipulation (the 1994 Stipulation) in Case No. 91CW211 which interpreted the meaning of the W–40 Stipulation. The 1994 Stipulation was filed with the water court and provided that Paragraph 8 of the W–40 Stipulation was intended:

> to provide physical water supplies to the four ditches named in said Stipulation to-wit: (a) Sloan No. 1 Ditch, (b) Diamond Bar Tee No. 3 Ditch, (c) Diamond Bar Tee No. 1 Ditch, and (d) Diamond Bar Tee No. 4 Ditch, by cessation of diversions as necessary of one or more water rights which divert upstream from one or more of the said named ditches, and was not intended to require the cessation of diversions other than those which could provide such physical water supplies upstream of the named ditches.

Denver and Climax were not parties to the 1994 Stipulation.

In 1994, the applicants, relying on a subordination allegedly established by the W–40 Stipulation, filed the application in Case No. 94CW264 for an alternate point of diversion and change of use regarding Diamond Bar T No. 3 Ditch and for approval of the remain-

---

**2.** A call is placed on a river when a senior appropriator forces upstream juniors to let sufficient water flow to meet the requirements of the senior priority. *SRJ I Venture v. Smith Cattle, Inc.,* 820 P.2d 341, 343 n. 3 (Colo.1991); *see* 2 G. Vranesh, *Colorado Water Law,* 684 (1987).

**3.** In the decree in Case No. 91CW211, the water court noted that the applicants did not seek any change in use of the water.

ing beneficial uses of domestic, stock watering and fish culture.[4]

In April 1995, the applicants filed a motion for declaratory judgment in Case No. 95CW65, concerning the meaning and effect of the W–40 Stipulation and to enforce the subordination of Denver's Fraser River Basin water rights to applicants' water rights, specifically applicants' rights concerning Diamond Bar T No. 3 Ditch. Englewood filed a motion for summary judgment in the declaratory judgment proceeding, alleging, *inter alia*, that the 1994 Stipulation resolved the issues raised by USI's motion for declaratory judgment as they pertained to Englewood. Englewood asserted that the 1994 Stipulation interpreted the W–40 Stipulation as requiring Englewood to subordinate its water rights upstream of USI's water rights in order to provide water to the water rights listed in the stipulation.

At a status conference, the water court ordered that the applicants' declaratory judgment request be treated as a motion *in limine* in Case No. 94CW264, where the applicants had applied for an alternate point of diversion and change of use for additional beneficial uses.

After a hearing on the motion *in limine* and the motion for summary judgment, the water court determined that "[b]y its plain terms, the [W–40 Stipulation] limits its application to Beaver Creek" (also known as Little Beaver Creek) and "does not subordinate objectors' rights in the Fraser River Basin to the rights of applicants." The water court concluded that the motion *in limine* should

be denied and dismissed.[5]  In addition, the water court concluded that Englewood's motion for summary judgment should be granted because Englewood and USI had agreed in the 1994 Stipulation to an interpretation of the W–40 Stipulation that resolved the issues raised in USI's complaint in Case No. 94CW264.[6]

USI now appeals the water court's order denying its motion for declaratory judgment with respect to Denver and Climax.[7]

## II.

USI asserts that the water court erred in ruling that the W–40 Stipulation limits its application by its plain terms to Beaver Creek and does not subordinate Denver's and Climax' water rights in the Fraser River Basin to USI's water rights. Specifically, USI contends that the water court's interpretation is unreasonable because Denver did not own, at the time of the execution of the W–40 Stipulation, a water right senior to Sloan's water rights on Beaver Creek that could supply Diamond Bar T No. 3 Ditch. USI claims we should reject the plain meaning of the W–40 Stipulation and conclude that the W–40 Stipulation applied to all of the tributaries which served as sources for the water rights listed in paragraph 8 of the W–40 Stipulation.

We do not agree.  We believe the water court properly determined that paragraph 8 of the W–40 Stipulation by its plain terms unambiguously applies to Beaver Creek and does not subordinate Denver's and Climax' water rights elsewhere in the Fraser River

---

4. This application essentially requested the same diversions decreed for irrigation in Case No. 91CW211, but this application sought these additional beneficial uses.

5. The water court entered the motion for declaratory judgment as a motion *in limine*.  Consequently, the applicants requested the water court to enter an order of final judgment pursuant to C.R.C.P. 54(b).  Englewood consented to the applicants' motion for final judgment for purposes of appeal.  The water court entered an order of final judgment determining that the motion *in limine* and the motion for summary judgment shall be considered a final judgment for purposes of appeal pursuant to C.R.C.P. 54(b).

6. Englewood is no longer a party to this proceeding.  We granted USI's motion for withdrawal of

designation of the City of Englewood, Colorado, as an appellee.  USI stated in its motion to withdraw that the water court granted Englewood's motion for summary judgment on the issue of the enforceability of the 1994 Stipulation and that enforcing such stipulation subordinated Englewood's upstream water rights to those of USI.  Hence, USI did not want to appeal the water court's ruling with respect to the summary judgment motion.

7. Because Englewood no longer owns any water rights senior to USI's water rights on Beaver Creek, USI attempts to apply the 1994 Stipulation to Denver and Climax in order to obtain the needed water.

Basin. Rather, the W–40 Stipulation prohibits Denver from placing a call on Beaver Creek if such a call would prevent USI from making maximum use of their listed water rights.

■ In order to determine whether the water court properly interpreted the W–40 Stipulation, we must apply general principles of contract law. The primary goal of contract interpretation is to determine and give effect to the intention of the parties. *See Cache Nat'l Bank v. Lusher*, 882 P.2d 952, 957 (Colo.1994); *Pepcol Mfg. Co. v. Denver Union Corp.*, 687 P.2d 1310, 1314 (Colo.1984) (recognizing contract must be construed to ascertain and effectuate mutual intent of the parties). The intent of the parties to a contract is to be determined primarily from the language of the instrument itself. *See KN Energy, Inc. v. Great W. Sugar Co.*, 698 P.2d 769, 776 (Colo.1985); *Radiology Prof'l Corp. v. Trinidad Area Health Ass'n*, 195 Colo. 253, 256, 577 P.2d 748, 750 (1978).

■ It is axiomatic that in construing a document courts should not rewrite the provisions of an unambiguous document, but must enforce an unambiguous contract in accordance with the plain and ordinary meaning of its terms. *See Wota v. Blue Cross & Blue Shield of Colorado*, 831 P.2d 1307, 1309 (Colo.1992); *Griffin v. United Bank of Denver*, 198 Colo. 239, 242, 599 P.2d 866, 868 (1979). In ascertaining whether certain provisions of an agreement are ambiguous, the instrument's language must be examined and construed in harmony with the plain and generally accepted meaning of the words employed. *See May v. United States*, 756 P.2d 362, 369 (Colo.1988); *Radiology Prof'l Corp.*, 195 Colo. at 253, 577 P.2d at 750; *see also Heller v. Fire Ins. Exch.*, 800 P.2d 1006, 1009 (Colo.1990) (stating where no ambiguity exists agreement will be enforced according to express provisions, giving words their plain and generally accepted meaning).

■ Consequently, written contracts that are complete and free from ambiguity will be found to express the intention of the parties and will be enforced according to their plain language. *See Union Rural Elec. Ass'n v. PUC*, 661 P.2d 247, 251 (Colo.1983).

Extraneous evidence is only admissible to prove intent where there is an ambiguity in the terms of the contract. *See Radiology Prof'l Corp.*, 195 Colo. at 256, 577 P.2d at 750. Absent such ambiguity, we will not look beyond the four corners of the agreement in order to determine the meaning intended by the parties. *See KN Energy, Inc.*, 698 P.2d at 776; *Pepcol Mfg. Co.*, 687 P.2d at 1314. Merely because the parties have different opinions regarding the interpretation of the contract does not itself create an ambiguity in the contract. *See May*, 756 P.2d at 369.

■ Along with these general principles of contract law, specific principles apply to stipulations. A party may stipulate away valuable rights provided it is not in violation of public policy. *Durbin v. Bonanza Corp.*, 716 P.2d 1124, 1128 (Colo.App.1986). A party's participation in a stipulation incorporated into a decree precludes that party from advancing legal contentions contrary to the plain and unambiguous terms contained therein. *United States v. Northern Colo. Water Conservancy Dist.*, 608 F.2d 422, 430 (10th Cir.1979). In addition, a court must give effect to the stipulations of the parties. *Id.; see also Colorado River Water Conservation Dist. v. Bar Forty Seven Co.*, 195 Colo. 478, 579 P.2d 636 (1978) (holding water court's refusal to give effect to stipulation of parties in settlement of change in water rights without providing reasons for such refusal is error.)

■ In our analysis we are guided by these principles of law. We conclude that the water court properly determined that the terms of the W–40 Stipulation were unambiguous and their plain and ordinary meaning limited the effect of the call provision of the W–40 Stipulation to the waters of Beaver Creek. Paragraph 8 of the W–40 Stipulation provides unambiguously that Englewood, Denver, and Climax and their successors or assigns "shall never make a call on the waters of Beaver Creek (or Little Beaver Creek, the same being known by both names) to supply any of their water right priorities in the Fraser River Basin or for any other purpose if such call would prevent the owner or owners" of various water rights, including the Diamond Bar T Ditch No. 3,

from making maximum use of that water right.

Nowhere in the text of the W–40 Stipulation does Denver or Climax agree never to make a call on other creeks or tributaries in the Fraser River Basin. Contrary to USI's assertion, paragraph 8 of the W–40 Stipulation does not require Denver to bypass waters from its Ranch Creek points of diversion, as alleged by USI, or any other diversion points within the Fraser River Basin for the benefit of the listed water rights owned by USI's predecessor, Sloan. The reference in paragraph 8 to the Fraser River Basin simply states that the parties would never make a call on Beaver Creek in order to supply any of their water right priorities in the Fraser River Basin. If the parties had intended for Englewood, Denver, or Climax to make bypasses of water to junior appropriators' water rights from all of the tributaries in the Fraser River Basin, the stipulation could have stated that intention. Bypass of water past an otherwise senior priority is a consequential matter and we should not presume, in the absence of explicit language, that the parties intended that effect, especially when, as here, there is no history of conduct by the parties to the W–40 Stipulation which demonstrates this common understanding. *See Town of Estes Park v. Northern Colo. Water Conservancy Dist.*, 677 P.2d 320, 327–28 (Colo.1984). The parties agreed that Englewood, Denver and Climax would not call the waters of Beaver Creek.

To construe the stipulation as applying to the entire Fraser River Basin would require us to ignore the plain meaning of the W–40 Stipulation as written. We will not rewrite the provisions of an unambiguous stipulation.

Because the W–40 Stipulation is free from ambiguity, we will enforce it as written without looking beyond it for a different interpretation.[8] Englewood, Denver, and Climax agreed to "never make a call on the waters of Beaver Creek" to supply any of their water right priorities in the Fraser River Basin. Consequently, we hold that the plain meaning supports the water court's conclusion that the language in paragraph 8 of the W–40 Stipulation is unambiguous and limited in effect to Beaver Creek.

### III.

#### A.

USI contends that the water court's denial of USI's motion for declaratory judgment conflicts with its granting of Englewood's motion for summary judgment. USI claims that its motion for declaratory judgment sought to apply the same interpretation of the W–40 Stipulation to Denver and Climax as was applied to Englewood by the 1994 Stipulation in Case No. 91CW211, and because Denver and Climax did not object to the meaning of the W–40 Stipulation in the 1994 Stipulation, they are bound by that

---

8. We recognize that USI raised several arguments in its appeal regarding the intention of the parties contrary to the plain and unambiguous meaning of the W–40 Stipulation. For instance, USI complains that the parties' construction of the W–40 Stipulation does not support the water court's conclusion regarding the W–40 Stipulation. USI notes that in 1993, their counsel wrote a letter to the Division Engineer for Water District Five and requested the Engineer's interpretation of the W–40 Stipulation. The Division Engineer responded in a letter that stated as follows:

[i]t is the *preliminary* position of this office that water rights owned by Denver or Englewood which are 'water rights priorities in the Fraser River Basin' and upstream upon the tributaries involved here (Ranch Creek and its tributaries) would have to be administered as subordinate in priority to the Diamond Bar Tee Ditch No. 1 and Diamond Bar Tee Ditch No. 3.

After consulting with the State Engineer and the Attorney General, the Division Engineer reversed his preliminary position and determined that the Fraser River Diversion Project owned by Denver was senior to the Diamond Bar T Ditch No. 3.

Also, USI asserts that the W–40 Stipulation does not require subordinating all of Denver's water rights in Fraser River Basin but that Denver must only bypass enough water upstream of Diamond Bar T Ditch No. 3 on South Fork of Ranch Creek to provide the required maximum use of the water right claimed for Diamond Bar T No. 3 Ditch, specifically 5 cfs.

Because we do not use extraneous evidence to prove intent where no ambiguity exists, we only consider the unambiguous terms of the W–40 Stipulation which limits the no call provision to the waters of Beaver Creek. Accordingly, we reject the various arguments of USI regarding the intention of the parties as contrary to the unambiguous meaning of the W–40 Stipulation.

construction.[9] But Denver and Climax were not parties to the case in which the 1994 Stipulation was executed and the parties did not obtain their consent to a change in the W–40 Stipulation.

We reject USI's assertion that the water court's rulings conflict. Although we recognize that the water court's rulings effectively impose different obligations on Denver and Englewood, this is reasonable because the 1994 Stipulation does not apply to Denver or Climax.

We recognize that stipulations are a form of judicial admission which are binding on the parties who make them. *Kempter v. Hurd,* 713 P.2d 1274 (Colo.1986); *Durbin v. Bonanza Corp.,* 716 P.2d 1124, 1128 (Colo.App.1986). However, a stipulation does not bind those who are not a party to such stipulation. *See Montgomery Ward & Co. v. City of Sterling,* 185 Colo. 238, 245, 523 P.2d 465, 469 (1974)(determining where lessee was not party to stipulation between condemners of property and owner, stipulation not proper basis for award and lessee was entitled to cross-examine appraisers who set value upon which stipulation was based); *Rossi v. Colorado Pulp & Paper Co.,* 88 Colo. 461, 495, 299 P. 19, 31 (1931) (holding that general creditors of an insolvent corporation who were not parties to a stipulation in a receivership proceeding are not bound by that stipulation).

Here, the water court denied USI's motion for declaratory judgment and refused to apply the 1994 Stipulation to Denver and Climax. In addition, the water court granted Englewood's motion for summary judgment, stating that "as to Englewood, the issues raised by the complaint were resolved by [the 1994 Stipulation] and that summary judgment should enter for Englewood."

Contrary to USI's position, these rulings do not conflict and are logically consistent. The water court's grant of Englewood's motion for summary judgment recognized that the parties to the 1994 Stipulation are bound by the terms of that stipulation. Conversely, the water court's denial of USI's motion for declaratory relief, which declined to apply the terms of the 1994 Stipulation to Denver and Climax, implicitly recognized that Denver and Climax cannot be bound by that stipulation because they were not parties to it.

**B.**

Next, USI claims that the W–40 Stipulation is similar to stipulations or contracts set forth in *City & County of Denver Board of Water Commissioners v. Fulton Irrigating Ditch Co.,* 179 Colo. 47, 506 P.2d 144 (1972), *City and County of Denver v. Consolidated Ditches Co.,* 807 P.2d 23 (Colo.1991), and *Perdue v. Fort Lyon Canal Co.,* 184 Colo. 219, 519 P.2d 954 (1974), and that here Denver is similarly attempting to improperly terminate the stipulation. However, USI's reliance upon these cases is misplaced.

For instance, in *Fulton,* and the subsequent case pertaining to the same contract *Consolidated Ditches,* this Court upheld a 1940 contract at issue. In the 1940 contract, Denver entered a written agreement with various ditch companies that provided in pertinent part:

It is understood and agreed that the City and County of Denver may make or permit any nonconsumptive use of water to create electric power, to dilute sewage, or the like while such water is on its way to its place of principal and ultimate beneficial use; and the City agrees that it will not use or attempt to use or lease any water, irrespective of source, which shall have been once used through its municipal water system and such water shall be allowed to become part of the nearest convenient natural water course.

*Fulton,* 179 Colo. at 60, 506 P.2d at 151. In *Fulton,* Denver entered into a subsequent agreement with the Coors Company which provided that Coors was to divert water and

---

**9.** USI argues that the 1994 Stipulation correctly interprets the W–40 Stipulation because it explains why Sloan and GREAT agreed to withdraw their protests in the W–40 proceeding because it insured that Denver and Englewood would bypass enough upstream water on each of the appropriate tributaries to supply the listed water rights, including Diamond Bar T Ditch No. 3.

Denver was to· replace that water in the river. We determined that the 1940 agreement had not been terminated, that Denver was bound by that agreement, and that the subsequent agreement with the Coors Company was therefore invalid. Consequently, we held that Denver could not exchange water under the Coors agreement. *Id.* at 63, 506 P.2d at 153.

Similarly, in *Consolidated Ditches,* Consolidated Ditches argued that the 1940 agreement precluded approval for Denver's application for augmentation with respect to alluvial wells used to irrigate two of Denver's municipal golf courses. We determined that the 1940 agreement was valid because it did not violate public policy and the plain terms of the contract stated the agreement could not be terminated unless it became impossible to perform. We determined Denver had not shown impossibility of performance. *Consolidated Ditches,* 807 P.2d at 33, 35–36.

■ Here, however, the 1994 Stipulation simply does not apply to Denver because Denver was not a party to that Stipulation.[10] In addition, as we have determined, the W–40 Stipulation by its plain terms limits the call provision to Beaver Creek. Hence, Denver and Climax, by refusing to subordinate other water rights in the Fraser River Basin, are not trying to avoid the W–40 Stipulation.

Similarly, USI's reliance upon *Perdue v. Fort Lyon Canal Co.,* 184 Colo. 219, 519 P.2d 954 (1974), is misplaced. In general, a party may stipulate away valuable rights provided it is not in violation of public policy. *See Durbin v. Bonanza,* 716 P.2d 1124, 1128 (Colo.App.1986). In addition, we have recognized that the water court has jurisdiction to determine the effect of a prior contract upon the exercise of decreed priorities. *Perdue,* 184 Colo. at 222–223, 519 P.2d at 956.

In *Perdue,* the City of Fort Lyon and Mr. Perdue entered into an agreement that provided that the Perdues could lay pipes and install pumps for water to be pumped from Thurston Lake to the lands of the Perdues. The agreement provided in pertinent part:

(a) That the construction, maintenance, and use of said pipeline, pump or pumps and power line, and any other structure, ditch, or equipment in connection therewith, are subject at all times and in and under all circumstances, to the superior right of [Fort Lyon] to use the said Thurston Reservoir in any way it deems necessary or proper; and the [Perdues] expressly agree that they will not at any time exercise the license herein given in any way to damage, injure, or interfere with the rights or property of the first party, and will not at any time claim that any rights are or will be created by prescription as against [Fort Lyon]. . . .

*Perdue,* 184 Colo. at 221, 519 P.2d at 955.

The Perdues proceeded to obtain a decree for five cfs of water from the reservoir. Several years later, Fort Lyon filed for a conditional right from the reservoir. The water court determined that the effect of the agreement was that the priority decreed to the Perdues was to be operated as junior to the Fort Lyon right. *Id.* at 222, 519 P.2d at 956. The Perdues argued that the water court was barred from determining the effect of the prior agreement, asserting that their decreed priority superseded the agreement. We held that the agreement between the two appropriators should be given effect. *Id.* at 223, 519 P.2d at 957.

While we agree that *Perdue* permits the holder of a senior right to enter into a no-call agreement with the holder of a junior right, and Denver and Climax did this with regard to Beaver Creek diversions of USI, that was the extent of the W–40 agreement. The 1994 Stipulation that claims to subordinate the water in the Fraser River Basin does not apply to Denver and Climax because Denver and Climax were not parties to the 1994 Stipulation. However, *Perdue* does support

---

10. Also, the W–40 Stipulation expressly qualifies the call provision on Beaver Creek to allow maximum use of the water "as they have been claimed in Civil Action No. 1430 [and 1768] in the District Court of Grand County, Colorado, Water District No. 51." Because of the changes decreed in 91CW211, the use of Diamond Bar T Ditch No. 3 water rights are no longer "as they have been claimed." Therefore, Denver's obligation is limited to the water rights as claimed in those prior actions.

our conclusion that the 1994 Stipulation is enforceable against Englewood because Englewood was a party to the 1994 Stipulation.

### IV.

We hold that the water court properly determined that the plain meaning of the W–40 Stipulation limits its application to. Beaver Creek and that Denver and Climax can never place a call on Beaver Creek to the detriment of USI's water rights listed in the W–40 Stipulation. In addition, we hold that the water court did not err in denying USI's motion for declaratory judgment while granting Englewood's motion for summary judgment because the motions were applicable to different parties. We affirm the order of the water court.