CHEROKEE METROPOLITAN DISTRICT, Applicant–Appellant

v.

UPPER BLACK SQUIRREL CREEK DESIGNATED GROUND WATER MANAGEMENT DISTRICT, Colorado Ground Water Commission, Wayne E. Booker, and Francis G. Booker, Opposers–Appellees.

No. 09SA337.

Supreme Court of Colorado.

En Banc.

Feb. 7, 2011.

Ryley Carlock & Applewhite, William B. Tourtillot, Roger T. Williams, Jackson Kelly PLLC, Martha Phillips Whitmore, Denver, Colorado, Law Office of Kevin Donovan, LLC, Kevin R. Donovan, Colorado Springs, Colorado, Attorneys for Applicant–Appellant Cherokee Metropolitan District.

Trout, Raley, Montaño, Witwer & Freeman, PC, Robert V. Trout, Peter D. Nichols, Lisa M. Thompson, Denver, Colorado, Attorneys for Opposer–Appellee Upper Black Squirrel Creek Designated Ground Water Management District.

Moses Wittemyer Harrison & Woodruff P.C., Timothy J. Beaton, Boulder, Colorado, Attorneys for Opposers–Appellees Wayne E. Booker and Francis G. Booker.

No Appearance by or on behalf of Opposers–Appellees Colorado Ground Water Commission and Appellee Pursuant to C.A.R. 1(e) Steve Witte, Division Engineer for Water Division No. 2.

Chief Justice BENDER delivered the Opinion of the Court.

## I. Introduction

In this case, we affirm the water Division No. 2 court's order that declared a number of conditional water rights abandoned, and we reverse the water court's entry of attorney fees. On January 25, 1999, Cherokee Metropolitan District ("Cherokee") and Upper Black Squirrel Creek Ground Water Management District ("UBS"), among other parties, entered into a Stipulation and Release concerning Cherokee's use of two sets of wells in the Upper Black Squirrel Creek Designated Ground Water Basin ("the Basin"). The water court incorporated the stipulation into a March 1999 conditional water rights diligence decree ("stipulated decree"). Paragraph 10.f of the stipulated decree requires Cherokee to file an application to perfect its conditional groundwater rights that have been applied to beneficial use "on or before two years after the first diversion" from the wells. The stipulated decree does not explicitly provide for a remedy should Cherokee file after the two-year deadline.

At issue here are Cherokee's conditional water rights to wells 14–17. While Cherokee timely filed for a sexennial finding of reasonable diligence for wells 14–17, it did not timely file within the stipulated two-year period to perfect the portion of the water from these wells that it diverted and put to beneficial use. UBS and the Bookers ("the Objectors") filed a motion to dismiss both Cherokee's application to make portions of wells 14–17 absolute and also its application for a finding of reasonable diligence on the wells. The Objectors asked the court to declare wells 14–17 abandoned in their entirety. The water court granted the Objectors' motion to dismiss Cherokee's application to make only a portion of wells 14–17 absolute and ordered those conditional rights abandoned.

We agree with the water court's interpretation of the stipulated decree. Based on the language of the stipulated decree, we hold that the parties' intended remedy for failure to comply with the strict filing deadline in Paragraph 10.f was abandonment. Hence, Cherokee could prove no set of facts in support of its application, and the water court correctly determined that Cherokee abandoned only the portions of its conditional rights to wells 14–17 for which it had untimely filed to make absolute.

## II. Facts and Proceedings Below

The parties in this case have been involved in protracted litigation over a number of Cherokee's conditional groundwater rights and its export of that water outside the Ba-

sin. Cherokee is a metropolitan district that supplies water to approximately 18,000 customers east of Colorado Springs. At issue in this case are Cherokee wells 14–17. These wells are located in the southern area of the Basin, which is within the UBS District. The Bookers also have water rights within the UBS District. Cherokee's predecessors in interest first received these conditional water rights on April 28, 1972. Although these are groundwater rights in a designated groundwater basin, the water court has continuing jurisdiction pursuant to our decision in *Sweetwater Development Corp. v. Schubert Ranches, Inc.*, 188 Colo. 379, 384, 535 P.2d 215, 218–19 (1975).

On January 25, 1999, Cherokee, UBS, the Colorado Groundwater Commission, and the State Engineer entered into a Stipulation and Release in order to resolve a number of contested issues relating to Cherokee's groundwater rights in the Basin.[1] The water court incorporated this stipulation into Findings of Fact, Conclusions of Law, Judgment and Decree ("stipulated decree") on March 8, 1999, which stated that Cherokee had exercised reasonable diligence in developing its conditional water rights in the Basin. We construed different sections of this same stipulated decree in *Cherokee Metropolitan District v. Simpson (Cherokee I )*, 148 P.3d 142 (Colo.2006).

The stipulated decree requires Cherokee to file an application to perfect its conditional water rights that have been applied to beneficial use within two years of the first diversion. The stipulated decree also states that Cherokee will abandon the amounts of its conditional rights not used for beneficial purposes. The provisions at issue in this case state:

> 10.b. Cherokee shall limit the decreed or permitted flow rate and volume of any well to that flow rate and volume actually used for beneficial purposes and *shall abandon those amounts not used for beneficial pur-*

*poses* by amending any permits and Water Court Decrees for appropriate wells.

> 10.f. Cherokee *shall timely file* a Water Court Application seeking to perfect the conditional groundwater rights of its wells that have been applied to their decreed and permitted beneficial uses. Cherokee *shall file said Water Court Application on [or] before two years after the first diversion from the wells* and will make best efforts toward final adjudication of the Water Court Application within one year after filing. In any event, any conditional groundwater rights that have been applied to their decreed and permitted beneficial uses shall be subject to regulation of the State and District one year after the first diversion from the well consistent with the Decree in Case No. 53483 District Court, Pueblo County, Colorado.

> 15. *Unless otherwise governed by Paragraph 10.f,* an application for a finding of reasonable diligence shall be filed six years from the date of this decree, on or before March 31, of 2005, and thereafter *as required by law* so long as the Applicant desires to maintain the conditional water rights described in paragraph 7, or until a determination is made that the conditional water rights have become absolute by reason of the completion of appropriations. (emphasis added).

Cherokee first applied water from well 14 to beneficial use in December 2000 and applied water from wells 15 and 16 to beneficial use in April 2002.[2] On February 14, 2005, Cherokee filed an application, in case 05CW006, to make absolute only the portions of wells 14–16 that it put to beneficial use. On March 9, 2005, Cherokee applied, in case 05CW020, for a sexennial finding of reasonable diligence for its conditional water rights to wells 14–17. These cases were later consolidated.

Before the cases were consolidated, the Division Engineer filed two Consultation Reports on July 29, 2005 in response to Chero-

---

**1.** Although the Bookers were not a party to the stipulation, any party may oppose an application for water rights pursuant to section 37–92–302(1)(b), C.R.S. (2010).

**2.** Although Paragraph 10.f requires filing on or before two years after the first *diversion*, Cherokee has provided the dates the water was applied to *beneficial use*. Regardless, the first diversion would have been before this date.

kee's two applications. In these reports, the Division Engineer brought to the water court's attention that Cherokee filed after the two-year deadline to make wells 14–16 absolute.

Cherokee applied water from well 17 to beneficial use on April 28, 2006. The parties dispute the date Cherokee filed to make a portion of well 17 absolute. Cherokee claims the relevant filing date is April 30, 2008, when it filed a "First Motion to Amend" its application to make its conditional rights absolute. The Objectors assert the relevant date is May 30, 2008, when Cherokee filed its "First Amended Application" to make its conditional rights absolute, in which it claimed to make a portion of well 17 absolute.[3] The water court ruled that the amended application was considered filed as of May 30, 2008.

The Objectors filed a motion to dismiss Cherokee's applications to make absolute its conditional rights to wells 14–17 that had been applied to beneficial use. The Objectors also asked the water court to dismiss Cherokee's application for a finding of reasonable diligence and asked the water court to declare wells 14–17 abandoned in their entirety, based upon their interpretation of Paragraph 4.b as requiring Cherokee to limit its conditional rights to that amount applied to beneficial use for which it had filed to make absolute.

Without conducting a hearing, the water court granted the Objectors' motion to dismiss Cherokee's application "to make Cherokee [wells 14–17] absolute." The water court found that it was "indisputable" that Cherokee did not file its applications to make absolute its conditional rights to wells 14–17 within the stipulated time frame. It reasoned that a conditional water right is a "vested property right, subject to forfeiture if the holder fails to pursue his conditional water rights with reasonable diligence." (citing *Talco Ltd. v. Danielson*, 769 P.2d 468 (Colo. 1989)). Therefore, it held that Cherokee abandoned its conditional rights in wells 14–17.

The Objectors moved for attorney fees incurred in their successful motion to dismiss on the ground that Cherokee's application "lacked substantial justification." § 13–17–102(4), C.R.S. (2010). The Objectors requested eighty percent of their total fees for the motion to dismiss, discounting their request based on an unsuccessful portion of their motion that is not at issue in this appeal.

The water court made findings of fact and awarded the Objectors attorney fees. The water court found that its remedy of abandonment and forfeiture has support in the law and that Cherokee was on notice as to its legal validity, the provisions of the stipulated decree, and that there was a "strenuous objection" by UBS, the Bookers, and the State Engineer's Office. It found that Cherokee was in a much stronger financial position than UBS and the Bookers. The water court also found that Cherokee initiated a "bad faith prosecution" to "resurrect its interests in Wells No. 14–17 because of prior counsel's negligence." Therefore, the water court held that the action lacked substantial justification and awarded $3,973.60 to UBS and $2,287.60 to the Bookers, which were their requested amounts.

Cherokee appealed the water court's orders of abandonment and attorney fees directly to this court based on our jurisdiction granted by section 13–4–102(1)(d), C.R.S. (2010).

### III. Paragraph 10.f

In this case, we must decide the narrow issue of the meaning of Paragraph 10.f in the stipulated decree and the consequence of an untimely 10.f filing. We agree with the water court that Cherokee's untimely filing under Paragraph 10.f resulted in abandonment. Initially, however, we must resolve the contested threshold issue of what portion of

---

**3.** Wells 14–17 were each conditionally decreed 4.0 cfs. Cherokee sought to make absolute only the portion of those rights that had been applied to beneficial use, between 2001–2003 for wells 14–16, and in 2006 for well 17. For wells 14–17, it sought to make absolute 32 acre feet/year, 308 acre feet/year, 219 acre feet/year, and 548.4 acre feet/year, respectively. In its May 30, 2008 amended application to make its conditional rights absolute, Cherokee stated that it would abandon the portions of wells 14–17 not requested to be made absolute.

Cherokee's conditional rights to wells 14–17 the water court ordered abandoned. In other words, we must decide whether the water court ordered the wells abandoned in their entirety, as the Objectors requested in their motion to dismiss, or ordered abandonment of the portion of these wells for which Cherokee untimely filed to make absolute.

In its ruling, the water court stated: "Objectors' Motion to Dismiss Applicant's application to make Cherokee [wells 14–17] *absolute* be and is hereby GRANTED." (emphasis added). While the water court could have been clearer in explaining which portions of the Objectors' motion to dismiss it granted with regards to wells 14–17, it only stated that Cherokee's application to make portions of wells 14–17 *absolute* was dismissed. The water court did not rule on Cherokee's application for a finding of reasonable diligence for the remaining conditional portions of wells 14–17. As such, the water court ordered abandonment only of the conditional portions of wells 14–17 for which Cherokee untimely filed to make absolute.

Having resolved this threshold issue, we must determine as a matter of law whether the water court correctly interpreted the stipulated decree as requiring abandonment for an untimely filing under Paragraph 10.f. As to this issue, Cherokee makes two alternative arguments. First, the correct remedy for an untimely filing is a contract remedy meant to restore UBS to the position it would have been in had Cherokee complied with the stipulation, or to compensate UBS for whatever benefit it was deprived of by Cherokee's failure to comply.[4] According to Cherokee, there is no evidence the parties intended for the drastic remedy of abandonment to apply, and if they had so intended, then they should have included it in Paragraph 10.f, as they did for a breach of Paragraph 10.b.

Cherokee's alternative argument is as follows. Assuming that abandonment is the correct remedy, then abandonment is based on section 37–92–301(4)(a)(I), C.R.S. (2010) of the Water Right Determination and Administration Act ("the Act") (describing the sexennial filing procedure for a finding of reasonable diligence); therefore, all the procedural prerequisites to abandonment under the Act would apply. This would entitle Cherokee to notice from the water court prior to the order of abandonment. § 37–92–305(7), C.R.S. (2010) ("Prior to the cancellation or expiration of a conditional water right ... the court wherein such decree was granted shall give notice, within not less than sixty days nor more than ninety days...."). This would also entitle Cherokee to file to perfect its conditional rights two years after diversion, at any time during the same month the water was diverted. § 37–92–301(4)(a)(III) (stating that subsequent applications for a finding of reasonable diligence shall be filed each six years "during the same month as the previous decree was entered").

We are not persuaded by Cherokee. First, we set forth the standard of review for resolving motions to dismiss and interpreting stipulated decrees. As a related matter, we consider Cherokee's argument that the Objectors' claims are subject to, and barred by, the three-year contract action statute of limitations, section 13–80–101(1)(a), C.R.S. (2010), and we conclude they are not. Next, we construe the stipulated decree and ultimately agree with the water court's interpretation. We hold that the parties' intended remedy for failure to comply with the strict filing deadline in Paragraph 10.f was abandonment and that Cherokee abandoned the portions of its conditional rights to wells 14–17 for which it untimely filed to make absolute.

**A.**

■ Turning first to the standard of review, when reviewing a motion to dismiss under C.R.C.P 12(b)(5), the court must take all allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Upper Eagle Reg'l Water Auth. v. Wolfe,* 230 P.3d 1203, 1209–10 (Colo.2010). A complaint should not be dismissed unless it

---

4. To this point, Cherokee claims there should be no sanction for its failure to comply with Paragraph 10.f because it gained no advantage from its late filing and UBS suffered no damages as a result.

appears beyond a doubt that a plaintiff can prove no set of facts in support of her claim which would entitle her to relief. *Pub. Serv. Co. of Colo. v. Van Wyk,* 27 P.3d 377, 385–86 (Colo.2001). When reviewing a trial court's ruling on a motion to dismiss, appellate courts are in the same position as the trial judge. *Id.* at 386.

■ We construe a stipulated decree as we would construe a contract. *Cherokee I,* 148 P.3d at 146; *City of Golden v. Simpson,* 83 P.3d 87, 93 (Colo.2004); *USI Props. E., Inc. v. Simpson,* 938 P.2d 168, 173 (Colo. 1997). Our review of the water court's interpretation of the stipulated decree is de novo. *Cherokee I,* 148 P.3d at 146; *City of Golden,* 83 P.3d at 94.

■ Consistent with contract principles, our primary goal when construing a stipulation is to determine and give effect to the intention of the parties as expressed in the agreed-upon language. *City of Golden,* 83 P.3d at 93. To determine the intention of the parties, courts look first to the plain meaning of the words in the instrument. *Id.* Only if there is ambiguity in the terms will courts look beyond the four corners of the instrument or admit extraneous evidence to ascertain the intention of the parties. *USI Props. E.,* 938 P.2d at 173. To determine whether there is ambiguity, courts must examine the instrument's language and construe it in harmony with the plain and generally accepted meaning of the words employed. *Id.* Simply because the parties disagree regarding the correct interpretation of the instrument does not itself create an ambiguity. *Id.*

■ Turning specifically to stipulations, they are admissions binding on the parties. *Kempter v. Hurd,* 713 P.2d 1274, 1279 (Colo.1986). A party may stipulate away valuable rights so long as it is not a violation of public policy. *Cherokee I,* 148 P.3d at 151; *USI Props. E.,* 938 P.2d at 173; *Kempter,* 713 P.2d at 1279–80. A party that participates in a stipulation may not argue legal contentions contrary to the plain meaning of the decree. *City of Golden,* 83 P.3d at 93. This lends "consistency and stability to Colorado water law and decrees." *Id.*

■ Water courts must give effect to the parties' stipulations, absent good reason to the contrary, by entering them into court decrees. *USI Props. E.,* 938 P.2d at 173; *Colo. River Water Conservation Dist. v. Bar Forty Seven Co.,* 195 Colo. 478, 481, 579 P.2d 636, 638 (1978). Water court decrees are critical to the administration of water rights and the prior appropriation system. They affect more rights holders than just the parties to a stipulation. The State Engineer, Division Engineers, and Water Commissioners are governed by and must regulate and distribute water according to water court decrees. §§ 37–92–301(3), –304(8), C.R.S. (2010); *Empire Lodge Homeowners' Ass'n v. Moyer,* 39 P.3d 1139, 1147 (Colo.2001).

■ Parties may seek to enforce water court decrees that have not been modified, subject to the doctrines of claim and issue preclusion and judicial estoppel. *See Farmers High Line Canal & Reservoir Co. v. City of Golden,* 975 P.2d 189 (Colo.1999). Here, Cherokee argues that the Objectors' claims that Cherokee breached the stipulation are subject to a contract action statute of limitations. Cherokee's attempt to characterize the stipulated decree as simply a contract is incorrect. The Objectors filed statements of opposition and a motion to dismiss in response to Cherokee's water court applications based on its failure to comply with a stipulated water court *decree.* Hence, their motions are not subject to the three-year statute of limitations which governs a contract.

## B.

■ Next, we must construe the 1999 stipulated decree to determine the correct remedy for an untimely filing under Paragraph 10.f. Paragraph 10.f states: Cherokee "*shall* timely file a Water Court Application seeking to perfect the conditional groundwater rights of its wells that have been applied to their decreed and beneficial uses ... *on [or] before two years* after the first diversion from the wells." (emphasis added).

The wording of this paragraph sets a mandatory time period in which Cherokee was required, but failed, to file an application to

perfect its conditional water rights within two years after the first diversion from the wells. Paragraph 10.f modifies the default timelines for abandonment of conditional water rights provided for in the Act. On the one hand, the Act does not set a time period in which a conditional water rights holder must file to make its water rights absolute after putting the water to beneficial use. *See Mun. Subdist., N. Colo. Water Conservancy Dist. v. Getty Oil Exploration Co.,* 997 P.2d 557, 561 (Colo.2000) ("Outside of requiring proof of reasonable diligence every six years, the legislature has not enacted a maximum time frame during which the conditional water right must mature."). On the other hand, the stipulated decree sets a two-year accelerated time period in which Cherokee was required to file to perfect its conditional water rights after diverting and putting that water to beneficial use.

Turning to the intended remedy for an untimely filing under Paragraph 10.f, we look within the four corners of the stipulated decree. We do not find it ambiguous that the parties intended abandonment as the remedy for a violation of Paragraph 10.f, even though the provision is silent as to the remedy. Paragraph 10.f uses mandatory language: "shall timely file." This means that the two-year filing deadline is compulsory and an untimely filing to perfect Cherokee's conditional rights is not permitted. The only possible consequence for failing to comply with this mandatory filing deadline is abandonment.

Cherokee's argument that contract remedies apply by virtue of the fact that stipulations are construed according to contract principles is inapposite. There is nothing, in the decree itself or the parties' filings, to support the contention that the parties intended an award of damages or some other contract remedy as the sanction for an untimely filing under Paragraph 10.f. Furthermore, the fact that abandonment was expressly provided for as a remedy in Paragraph 10.b, which we need not construe in the present case, does not change our understanding that abandonment was also the intended remedy for a violation in Paragraph 10.f.

■ The stipulated decree must be considered in context. The stipulated decree modified the general body of water law, to which we look by way of analogy. Under the Act, failure to comply with a filing deadline results in abandonment of a conditional water right, even if only by a matter of days and without intent to abandon. *Double RL Co. v. Telluray Ranch Props.,* 54 P.3d 908, 911 (Colo.2002); *Purgatoire River Water Conservancy Dist. v. Witte,* 859 P.2d 825, 833 (Colo.1993). The fact that abandonment is already the default remedy under the Act supports our understanding that the parties were aware of the remedy of abandonment and intended for it to apply.

■ We next turn to Cherokee's alternative argument that if abandonment is found to be the intended remedy, then it was entitled to all rights under the Act, namely, prior notice before abandonment, and to file within the same month of diversion. We are not persuaded. Paragraph 15 of the decree states that "*[u]nless otherwise governed by Paragraph 10.f,* an application for a finding of reasonable diligence shall be filed six years from the date of this decree ... and thereafter *as required by law.*" (emphasis added). This provision means that the parties incorporated into their stipulation the statutory sexennial filing rules for a finding of reasonable diligence, unless Cherokee had made a diversion, in which case Paragraph 10.f would apply and Cherokee would be subject to its filing deadlines and provisions. Paragraph 10.f does not contain the language "as required by law" as contained in Paragraph 15, meaning it is a stand-alone provision, and it does not incorporate the requirements under the Act. As such, statutory notice was not required prior to the order of abandonment of Cherokee's conditional rights for failure to timely file under Paragraph 10.f. Additionally, as Cherokee admits, the stipulated decree did not require it to notify the water court when it made the first diversions from the wells. As a result, the court would have no way of knowing when Cherokee made the diversion, making it impossible for the water court to give the prior statutory notice of abandonment.

Cherokee next argues that it was entitled to file within the same month of the diversion under section 37–92–301(4)(a)(III). Cherokee claims that the relevant 10.f filing date to perfect well 17 occurred on the date it filed its motion to amend its application, which was on April 30, 2008, two years and two days after its first diversion from well 17. Because this was within the same month of diversion, Cherokee contends it did not abandon any rights to well 17.

■■■ Section 37–92–301(4)(a)(III) states that a subsequent application for a finding of reasonable diligence "shall be filed during *the same month* as the previous decree was entered every six years after such entry of the decree." (emphasis added). First, this provision is contrary to the plain language of Paragraph 10.f, which required Cherokee to file to perfect its conditional rights "*on or before* two years after the first diversion." (emphasis added). Second, as mentioned above, Paragraph 10.f does not incorporate the provisions of the Act. Finally, section 37–92–301(4)(a)(III) allows for filing within the same month as the previous decree was entered; it says nothing about filing within the month of diversion. Therefore, Cherokee was not entitled to file at any time within the same month of the diversion. Instead, as stated in the stipulated decree, it was obligated to file *on or before* two years after the first diversion, which means, to the day.

The stipulated decree is a bargained-for instrument, agreed to by the parties in consideration for resolving litigation. Cherokee was entitled to stipulate away valuable rights under the Act, such as a sexennial schedule of filing deadlines, notice prior to cancellation, and the ability to file within the same month of diversion. In entering the stipulation and decree, Cherokee did just that. Hence, we hold that the parties' intended remedy for failure to comply with the strict filing deadline in Paragraph 10.f was abandonment.

### C.

■■■ Having determined the correct interpretation of the stipulated decree, we must apply it here. Cherokee was roughly two years and two months tardy in filing to perfect well 14 after diversion and roughly 10 months tardy in filing to perfect wells 15 and 16.[5] Concerning well 17, we find it unnecessary to consider whether the relevant 10.f filing was the date Cherokee filed its motion to amend or the amended application itself. At a minimum, Cherokee was two days late in filing to perfect well 17. Cherokee did not comply with Paragraph 10.f when filing to perfect a portion of its conditional rights to wells 14–17.

Hence, Cherokee could prove no set of facts in support of its application, and the water court correctly determined on a motion to dismiss that Cherokee abandoned only the portion of its conditional rights to wells 14–17 for which it untimely filed to perfect under Paragraph 10.f of the stipulated decree. Because the water court only ordered abandonment of the conditional portions of these wells for which Cherokee untimely filed to perfect, we reach no determination as to whether Cherokee should receive a finding of reasonable diligence for the remaining conditional portions or whether the stipulated decree mandates that those amounts should be considered abandoned.

### IV. Attorney Fees

■■■ Turning to the second issue on appeal, Cherokee argues that the water court erred in awarding the Objectors attorney fees. Cherokee claims that it had a good faith belief and sound legal basis for arguing that abandonment was not the correct remedy because the stipulation was silent as to the correct remedy and because stipulations are interpreted according to contract principles. As to this issue, we agree with Cherokee.

■■■ A party may move for the award of attorney fees under section 13–17–102. A district court shall award attorney fees against an attorney or party that it determines has asserted a claim or defense that lacks "substantial justification." *In re Mar-*

---

**5.** Cherokee has not provided the exact date it first diverted water from these wells, but the filing dates were clearly beyond the two-year deadline.

*riage of Aldrich,* 945 P.2d 1370, 1378 (Colo. 1997); § 13–17–102(2), (4). An action lacks substantial justification if it is "substantially frivolous, substantially groundless, or substantially vexatious." § 13–17–102(4).

Here, Cherokee's argument that a contract remedy should apply is at least rational, as there is no controlling law on the paragraph at issue in the stipulated decree. Although Cherokee ultimately did not survive a motion to dismiss, there were no factual disputes, only legal. Where rational minds can disagree, as evidenced by this court's own opinion, a party's claims to pursue a creative, but ultimately wrong, legal theory to protect its significant rights are not substantially frivolous, groundless, or vexatious. Hence, we reverse the water court's entry of attorney fees.

## V. Conclusion

For the reasons stated above, we affirm the water court's order of abandonment of only the conditional rights to wells 14–17 for which Cherokee untimely filed to make absolute, and we reverse its award of attorney fees.

Justice COATS dissents, and Justice EID and Justice MÁRQUEZ join in the dissent.

JUSTICE COATS, dissenting.

While I consider it a generous reading of the water court's order, I agree with the majority that the stipulated decree in this case contemplated a two-year filing requirement *only* with regard to water already appropriated, by actual diversion and application to a beneficial use. Largely for that reason, however, I disagree that the stipulation's silence as to late filing implies complete abandonment of the conditional right and its accompanying priority date. Because I believe not only that the majority's rationale (ostensibly construing only the unique stipulation in this case) has important implications for the cancellation of conditional water rights in this State generally, but also that the majority far too lightly deprives the applicants of important statutory rights, I respectfully dissent.

As the majority finds, the stipulation at issue here does not purport to shorten the time for demonstrating reasonable diligence or otherwise alter the statutory requirements for Cherokee's completion of its appropriations. Paragraph 10.f adds additional conditions, not included in the statute, requiring Cherokee "to seek to perfect," within two years of first diversion, its conditional rights with regard to groundwater it has already diverted and put to beneficial use and, in any event, subjecting such appropriated groundwater to regulation by the State and District one year after first diversion. Although the effect of this provision may be to compel Cherokee to perfect its conditional rights piecemeal as groundwater from its wells is put to its decreed beneficial use, the unmistakable point of paragraph 10.f is to expeditiously subject groundwater of this description to regulation upon the completion of its appropriation and to formally make the conditional right to its use absolute.

In addition to the stipulation's silence on the matter, inferring abandonment as the intended consequence for failing to timely seek judicial confirmation of a completed appropriation is, at least to my mind, the very height of hyper-technicality. Even though the failure to demonstrate reasonable diligence in completing an appropriation, every six years as statutorily required, results in a conditional right being considered abandoned, see § 37–92–301(4)(a)(I), C.R.S. (2010), we have held that prior to judicially cancelling or declaring that right expired, a court must nevertheless give the grantee at least sixty-days notice by certified or registered mail, see § 37–92–305(7), C.R.S. (2010). *In re Water Rights of Double RL Co.,* 54 P.3d 908, 912 (Colo.2002). Despite directly conflicting statutory language, we there found significant (and quoted) the comments of a state senator lamenting as tragic the loss of such an important right as a consequence of merely missing a filing date. *Id.* at 912. How much more pointless, and for that reason probably not contemplated by the parties, would be the loss of important groundwater rights that have already been perfected to the extent of completing an appropriation, for simply missing a filing date

to have the completed appropriation evidenced by formal judicial decree.

Whether or not the legislature's superimposition of this notice requirement actually bars, in all cases, judicial cancellation of conditional water rights without advance notice, I consider it far more reasonable to understand the stipulation in this case as setting a point after which Cherokee's conditional rights would become cancelable, should it continue to fail to seek a judicial declaration making them absolute. If, as even the majority appears to acknowledge, paragraph 10.f merely accelerates the time within which Cherokee was obligated to seek judicial recognition that it had completed the appropriation of some portion of its conditional right, then no harm could come from requiring, as does the statute, that Cherokee be prompted before suffering such a harsh penalty. Permanent loss of Cherokee's valuable priorities for merely failing to timely request something that (under the terms of the stipulation) amounts to little more than a ministerial act is so far out of proportion as to make its inference from complete silence virtually unthinkable.

This is not the first time we have construed, to the advantage of the State Engineer, provisions of this stipulation left openly (and perhaps intentionally) ambiguous. *See Cherokee Metro. Dist. v. Simpson,* 148 P.3d 142, 152 (Colo.2006) (Coats, J., dissenting). I do not consider it the role of the courts to supply missing terms to any stipulation by parties, much less to infer from their absence a waiver of express statutory protections against precisely this kind of inadvertent loss. Because I believe that the unduly harsh result sanctioned by the majority was never contemplated by the parties and that the stipulated decree in this case cannot fairly be read to suggest that it was, I respectfully dissent.

I am authorized to state that Justice EID and Justice MÁRQUEZ join in this dissent.