**AMERICAN FAMILY MUTUAL INSURANCE CO.,**
Petitioner

v.

**Ed DeWITT and Sarah Elaine DeWitt, Respondents.**

No. 08SC308.

Supreme Court of Colorado,
En Banc.

Oct. 13, 2009.

Roger Moore, Dwight L. Pringle, Law Office of Roger Moore, Denver, CO, for Petitioner.

Craig S. Nuss, William P. Boyle, Patterson, Nuss & Seymour, P.C., Greenwood Village, CO, for Respondent.

Justice MARTINEZ delivered the Opinion of the Court.

## I. Introduction

American Family Mutual Insurance Company ("American Family") brought this action against Sarah and Ed DeWitt (collectively "DeWitts"), as subrogee of its insured, Jeffrey Henderson ("Henderson"). Henderson suffered injuries after a collision with a vehicle owned by Ed DeWitt and operated by Sarah DeWitt. Henderson brought an uninsured/under insured motorist ("UM/UIM") claim against American Family which went to arbitration and resulted in a payment from American Family to Henderson in the amount of $100,000.

As subrogee to Henderson, American Family brought this action against the DeWitts, seeking damages in the amount of $100,000. A jury trial was held and American Family was awarded $16,000 in damages. American Family appealed the ruling, arguing that its role as subrogee rendered the claim equitable in nature, thereby making the presence of a jury inappropriate. In addition, American Family contends the trial court erred in allowing its former attorney, Heather Salg ("Salg"), who represented the company during the arbitration, to testify as to her valuation of the case during the arbitration process. The court of appeals affirmed the trial court, holding the claim was legal in nature and therefore the trial court properly empaneled a jury, and holding American Family failed to properly preserve its objection related to Salg's testimony at trial.

We granted certiorari and now affirm the judgment of the court of appeals. While the act of subrogation has its roots in equity, we find that the presence of a subrogee party does not transform otherwise legal claims into claims in equity. Therefore, we hold that the utilization of a jury as fact finder in this case was proper. As for the testimony of American Family's former attorney that, during arbitration, she valued the case at $7,500, we find that American Family's objection to such testimony did not provide the trial court with an adequate opportunity to address the argument made on appeal that the evidence was inadmissible.

## II. Facts and Procedural History

This case arises from a motor vehicle collision occurring on October 10, 2000, on Interstate 70 near Ward Road. Respondent Sarah DeWitt was driving a car owned by her father, Respondent Ed DeWitt, when she collided with a vehicle owned by Henderson. At the time of the collision, Henderson was insured by American Family under a policy providing up to $100,000 in UM/UIM coverage. The DeWitts' vehicle was insured by Mid–Century Insurance with a policy providing liability limits of $25,000.

After the accident, the DeWitts' insurance company, Mid–Century, offered Henderson $25,000, representing the per occurrence limit of the DeWitt liability coverage in 2003. However, American Family, Henderson's insurer, refused to authorize the payment. Instead, American Family chose to advance Henderson $25,000, the value of the Mid–American policy, in order to avoid releasing the DeWitts from liability. In exchange for the advanced proceeds, American Family accepted an assignment of Henderson's claims against the DeWitts. American Family filed this action, as subrogee to Henderson's rights, against the DeWitts to recover its payment. American Family, standing in the shoes of Henderson, asserted claims against Sarah DeWitt based on allegations of negli-

gence and against Ed DeWitt under the Family Car Doctrine.

Henderson believed his losses exceeded $25,000 so he made a UM/UIM claim against his insurer, American Family. The claim went to arbitration, as provided for in the policy language. American Family was represented in the arbitration by Heather Salg. Neither of the DeWitts were allowed to intervene in the contractual UM/UIM arbitration between Henderson and American Family. The DeWitts were not allowed to call witnesses, make statements, engage in discovery, or cross-examine witnesses during the arbitration. The arbitrator ruled Henderson suffered noneconomic losses of $200,000 and, as a result, American Family paid Henderson $75,000, the balance of his $100,000 UM/UIM coverage limit.

American Family then amended its complaint in this case to seek recovery of the additional payment. The parties' combined Trial Management Order contained the following stipulated facts: (1) Sarah DeWitt was liable for the accident; (2) Henderson was not at fault in causing the accident. Additionally, the Trial Management Order described the damages sought as follows:

> Plaintiff paid its insured in under-insured motorist benefits for the insured's pain, suffering and psychic damages in the sum of $100,000, or its policy limits. Plaintiff seeks reimbursement of $100,000 in underinsured motorist benefits from Defendants Sarah and Ed DeWitt. Plaintiff was required to make this payment pursuant to the terms of Mr. Henderson's insurance policy and the findings of an independent arbitrator triggered by a dispute between Mr. Henderson and Plaintiff over the amount of his potential recovery under his policy. Pursuant to Colorado Law, Plaintiff is entitled to 9 percent interest on this amount, from the date of loss on October 20, 2000. The statutory interest to the trial date of October 3, 2005, is in the amount of $44,679.68, jointly and severally from Defendants Sarah Elaine DeWitt and Ed DeWitt plus court costs of $488.80 and for any other relief this Court deems proper.

Prior to trial, American Family moved to strike the DeWitts' jury demand, arguing that, because Sarah DeWitt admitted negligence, the trial court "sitting in equity [should] determine the issues of restitution, reimbursement, unjust enrichment, and the family car doctrine." American Family argued that all claims in controversy sounded in equity and that there existed no issue of fact necessitating the presence of a jury. The DeWitts opposed the motion, arguing that American Family was not enforcing an equitable right, nor seeking to invoke the coercive powers of the court. Rather, the DeWitts argued, American Family was standing in the shoes of Henderson, asserting his tort claims for personal injury, which constitutes legal relief. The trial court denied American Family's motion to strike the jury "for the reasons set forth in the Response." In a bench ruling on the first day of trial, the trial court again refused to strike the jury.

As the jury trial proceeded, the DeWitts endorsed Heather Salg, who represented American Family during the arbitration proceedings, as a witness to testify about that arbitration. Counsel for American Family objected to calling Salg as a witness for the DeWitts, arguing that such testimony was not relevant, invaded the province of the jury, and that Salg was not endorsed as an expert witness. The trial court overruled the objection, and Salg, no longer representing American Family, testified on direct examination that during the prior Henderson–American Family arbitration she asked the arbitrator to award Henderson $7,500. On cross-examination, counsel for American Family inquired into Salg's rationale for asking the arbitrator for $7,500, as well as whether the $7,500 figure represented her opinion regarding the worth of the case, based on her experience as an attorney.

As the trial concluded, the jury returned a verdict in favor of American Family and against the DeWitts, jointly. The jury found Henderson incurred damages as a result of the collision, and that Sarah DeWitt's negligence caused Henderson's damages. The jury also found that Sarah DeWitt was a resident of her father's household and thus

Ed DeWitt was vicariously liable via the Family Car Doctrine. The jury determined Henderson was damaged in the amount of $16,000.

American Family appealed the verdict, arguing that the trial court committed reversible error in refusing to strike the jury and that the trial court abused its discretion and committed reversible error in allowing Salg to testify over American Family's objections. The court of appeals affirmed, finding the thrust of the action was legal in nature, entitling the DeWitts to a jury. The court of appeals also determined that a relevancy objection was made, but, since the argument on appeal stemmed from an unfair prejudice analysis, the issue was not properly preserved. The court of appeals held that a relevancy objection did not sufficiently encompass unfair prejudice concerns and therefore a separate and distinct objection was required.

American Family filed a petition for certiorari in this case, arguing the same two sources of reversible error. We granted the petition and now affirm the ruling of the court of appeals.[1]

### III. Analysis

### A. American Family's Motion to Strike Jury

■ American Family brought this claim against the DeWitts as Henderson's subrogee. American Family claims the concept of subrogation is equitable in nature and, therefore, its subrogee status necessarily creates a cause of action that sounds in equity rather than at law. We disagree that the existence of subrogation necessarily creates an equitable action and, accordingly, affirm the ruling of the court of appeals.

### 1. Law and Equity

The distinction between law and equity has its roots in our judicial history. For many years, our judicial system contained separate courts of law and courts of equity, each of which developed different rules of substance, procedure, and remedy. Dodd, *Law of Remedies,* § 2.6(3) (2d ed.1976). Courts of law and courts of equity offered distinct types of relief to parties. For example,

> The damages remedy was historically a legal remedy. The injunction and most other coercive remedies were equitable. Restitution, on the other hand, was a remedy available in certain cases at law, and in certain others in equity. With restitution, the classification depended on the specific kind of restitution the plaintiff sought.

*Id.* § 1.2. An additional distinction, most pertinent to our discussion here, is that the courts of equity, unlike the courts of law, did not provide a right to a jury trial. *Id.* § 2.6(2).

In the 19th century, the American legal system underwent sweeping reform that abolished separate equity courts and created a single form of action—the civil action. *Id.* § 2.6(1). This development is known as the merger of law and equity. *Id.* Merger is reflected in our Colorado Rules of Civil Procedure, which state "[t]here shall be one form of action to be known as 'civil action.'" C.R.C.P. 2. As a result, in Colorado, there are no longer separate equity rules of procedure. However, merger did not completely eliminate the distinctions between law and equity.

■ Merger has not eliminated the difference between law and equity with regard to jury trials. Purely equitable cases are still tried without a jury, while cases at law are constitutionally entitled to a jury. Thus, in order to determine whether the trial court erred in denying American Family's motion to strike the jury, we must determine whether the case was equitable in nature, thereby making the presence of a jury inappropriate.

---

1. This court granted certiorari in order to consider:

 1. Whether the court of appeals ruled contrary to this court's holding that insurance subrogation is an equitable action when it upheld the trial court's submission of the case, in which liability was not an issue, to the jury.

2. Whether the court of appeals disregarded the decisions of this court concerning the integrity of the attorney-client relationship when it upheld the trial court's decision to allow DeWitt to call American Family's former counsel as a witness against American Family at trial over American Family's objection.

## 2. Subrogation

The procedural backdrop of this case is that American Family has subrogated to Henderson's rights and claims. Subrogation is defined as the "substitution of one person for another; that is, one person is allowed to stand in the shoes of another and assert that person's rights against the defendant." Dodd, § 4.3(4). For example, if the defendant owes a creditor $100 and the plaintiff pays the debt on the defendant's behalf, the plaintiff may subrogate to the creditor's rights and enforce that creditor's rights.

■■ Subrogation itself is a traditionally equitable remedy, which, by contract, can also occur at law. It is a form of restitution, an equitable principle that seeks to prevent a defendant from obtaining unjust enrichment. *Id.* §§ 4.2(1), 4.3(4). In other words, by paying a debt that rightfully belongs to another, the subrogee has created a windfall for the debtor. Subrogation allows the subrogee to pursue that amount against the rightful debtor, thus eliminating any unjust transfer of responsibility for the debt. *See* 6A John A. Appleman, *Insurance Law & Practice* § 4054 (1972) ("Subrogation rests on the maxim that no one should be enriched by another's loss.").

■ Most insurance policies expressly provide for subrogation. This type of contractual subrogation is known as "conventional subrogation." However, even if an insurance policy contained no such clause specifically setting forth the insurance company's subrogation rights, an insurer would still enjoy an equitable right to subrogation, which is known as "equitable subrogation." *See Medica, Inc. v. Atlantic Mut. Ins. Co.,* 566 N.W.2d 74, 76–77 (Minn.1997).

■ Therefore, if an insurance company brought a claim seeking the right to subrogate itself to its insured's claim, the nature of that claim would depend on the language of the policy at issue. If the applicable insurance policy did not provide for a right to subrogation, the insurance company would bring a claim in equity, seeking the right to subrogate. Because it would be in equity, the insured would not be entitled to a jury trial. However, if the insurance policy did contain a subrogation clause, an insurance company seeking to enforce that clause would bring a case at law and the insured would be entitled to a jury.

■ However, it is important to note these distinctions apply only to an insurance company's attempt to obtain subrogation rights. Once an insurance company enjoys those rights, they "stand in the shoes of the insured" for all legal purposes and may pursue any rights held by the insured subrogor. If the insurance company, as subrogee, is allowed to pursue the legal claims of its subrogor, the mere existence of subrogation does not transform those claims at law into equitable actions. In other words, a subrogated insurer "has no greater rights than the insured, for one cannot acquire by subrogation what another, whose rights he or she claims, did not have." 16 *Couch on Insurance* § 222:5 (3d ed.).

Here, American Family's policy with Henderson contained an express subrogation clause.[2] Therefore, had American Family brought a suit to enforce its subrogation rights, that claim would have been at law, rather than at equity. However, American Family did not bring a claim to enforce its subrogation rights. Rather, it brought a claim as Henderson's subrogee. Therefore, rather than focusing on the existence of subrogation, we must evaluate the nature of the actual claims asserted by American Family on behalf of Henderson in order to determine whether the DeWitts were entitled to a jury. *See, e.g., Valadez v. Capital Enter. Ins. Group,* 519 N.E.2d 1257, 1258 (Ind.App.1988) ("[Subrogation] pertains only to proving Capital's standing to recover damages attributable to Valadez's negligence and is not a *claim* sufficient to effect a decision, one way or another.")(emphasis in original).

**2.** The American Family Insurance Policy held by Henderson states: **Our Recovery Rights.** If **we** pay under this policy, **we** are entitled to all the rights of recovery of the person to whom payment was made against another. That person must sign and deliver to **us** any legal papers relating to that recovery, do whatever else is necessary to help **us** exercise those rights and do nothing after loss to harm **our** rights. (Emphases in original).

### 3. American Family's Claims

Standing in the shoes of Henderson, American Family asserted two claims in the underlying action. First, American Family claimed Sarah DeWitt was negligent. Second, American Family claimed Ed DeWitt was vicariously liable for Sarah DeWitt's negligence pursuant to the Family Car Doctrine. Both of the claims here are legal in nature because they are rooted in negligence, a recognized action at common law prior to merger. In bringing these claims, American Family had the same burden of proving the elements necessary for recovery that Henderson would have had in the absence of subrogation.

 There are two methods available to courts seeking to determine whether an action is legal or equitable.

First, courts examine the nature of the remedy sought. Actions seeking monetary damages are considered legal while actions seeking to invoke the coercive power of the court, such as those seeking injunctions or specific performance, are deemed equitable. Second, courts look to the historical nature of the right that a plaintiff is seeking to enforce. A claim is equitable when the plaintiff is seeking to enforce a right originally created in or decided by equity courts.

*Peterson v. McMahon*, 99 P.3d 594, 597–98 (Colo.2004) (internal citations omitted). "[W]e have generally preferred using the remedial method in deciding whether a claim is legal or equitable." *Id.* at 598; *see also Continental Title Co. v. Dist. Ct.*, 645 P.2d 1310, 1316 (Colo.1982) (concluding "the determining issue" when deciding whether a case is legal or equitable for purposes of a jury trial "is the characterization of the nature of the relief sought").

Although American Family did not specify the type of damages sought in the Amended Complaint, as subrogee to Henderson, American Family is limited to those claims and remedies available to its subrogor. Had Henderson brought suit against the DeWitts, he would have sought monetary damages intended to compensate him for his injuries resulting from the DeWitts' negligence. Because American Family is limited to those claims and remedies available to its subrogor, American Family was only entitled to pursue compensatory damages, which are legal, rather than equitable, in nature.

 Therefore, although American Family did subrogate to Henderson's rights, and subrogation has roots in equity, the subrogation rights involved here were contractual, rather than equitable, constituting conventional subrogation. The mere existence of subrogation does not transform all subsequent claims into claims in equity. Turning to the rights obtained by American Family through that subrogation, negligence is a cause of action at law, whether examining the historical roots of the concept or the remedies sought. As such, the court of appeals did not err in upholding the trial court's decision to deny American Family's motion to strike the jury.

### B. Testimony of Heather Salg

#### 1. Nature of the Objection to Salg's Testimony

Heather Salg served as counsel for American Family during the insurance company's arbitration with Henderson. After American Family brought suit against the DeWitts as Henderson's subrogee, the DeWitts called Salg to testify to the position taken by American Family during arbitration regarding the value of the case. At arbitration, American Family contended Henderson's claim was only worth $7,500.

Counsel for American Family objected to Salg's testimony, stating, "I can't possibly understand what relevant evidence, what Heather Salg has for this jury … her testimony is irrelevant to any of the issues of this case." Over the course of the conversation, counsel for American Family also stated that Salg's testimony was "not backed up by any establishment. Any expertise in evaluating injury claims. She's no more than an attorney for the company." Counsel for American Family argued "people take advocacy positions without having the necessary belief in their validity." Finally, counsel for American Family implied bias on the part of Salg, stating, "she's got a dog in the hunt. Indeed,

she was on the wrong side of the decision in this case."

The trial court characterized Salg's statement that the claim was worth $7,500 as an admission and allowed the testimony to come in, subject to cross-examination. During direct examination, the DeWitts only asked Salg how much money she requested from the arbitrator for Henderson's case. She responded that she asked for $7,500.[3] On cross-examination, it was American Family that induced Salg to testify regarding her rationale for that decision, as well as that the $7,500 figure represented her opinion regarding the worth of the case, based on her experience as an attorney. American Family now argues that the trial court erred by allowing Salg to testify, regardless of whether a proper objection was made, because calling an opponent's attorney is an unfair litigation tactic that interferes with the attorney-client relationship and the duty of zealous representation.

### 2. Appropriateness of the Objection

In order to properly preserve an objection to evidence admitted at trial, a timely and specific objection must appear in the trial court record. *See* C.R.E. 103(a)(1) (an "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless ... a timely objection or motion to strike appears of record, stating the specific grounds of objection").

The objection made by counsel for American Family was a challenge to the relevancy of Salg's testimony, pursuant to Rule 401 in the Colorado Rules of Evidence. On appeal, American Family argues that Salg's testimony was unfairly prejudicial and constituted an unfair litigation tactic.

Rule 401 states, " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[4] Trial counsel's

argument was that Salg was not qualified to testify to the value of the case and that she was biased; in making the objection, trial counsel stated "Her opinion is not worth anything.... She's not an expert ... and she's grinding an axe."

American Family argued to the court of appeals, and in its reply brief to us, that, although trial counsel did not mention C.R.E. 403 or use the words "prejudice" or "prejudicial," an objection pursuant to C.R.E. 403 is subsumed within a valid Rule 401 objection. Rule 403 states, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

 American Family articulated only a relevancy objection and failed to communicate any concerns about unfair prejudice, or that calling an opponent's attorney is an unfair litigation tactic, in a manner sufficient to direct the trial court's attention to the argument made on appeal. "An objection affords the judge an opportunity to focus on the issue and hopefully avoid the error." *U.S. v. Turman*, 122 F.3d 1167, 1170 (9th Cir.1997). A proper objection to evidence must be one "stating the specific ground of objection, if the specific ground was not apparent from the context...." C.R.E. 103(a)(1). In other words, even if an objection does not specifically identify the rule underlying the objection, it may nonetheless be sufficient to preserve an issue for appeal if the objecting attorney presents arguments or utilizes language that "alert[s] the trial judge to the impending error." *People v. Montague*, 181 Colo. 143, 145, 508 P.2d 388, 389 (1973); *see also U.S. v. Wilson*, 966 F.2d 243, 245 (7th Cir.1992) (finding a prejudice objection was not preserved where defendant "did not raise Rule 403 or even mention the prejudicial effect of the gun before the district court").

---

**3.** Prior to Salg's testimony, Henderson, American Family's insured, testified without objection that American Family's attorney asked the arbitrator to award $7,500.

**4.** It should be noted that, technically speaking, an objection to the admission of irrelevant evidence would actually fall under C.R.E. 402, which states, in part, "Evidence which is not relevant is not admissible."

The concepts of relevancy and unfair prejudice may be so intertwined that an argument about the effect of evidence may sufficiently alert a trial court about both the probative value of the evidence and the manner in which that evidence might be unfairly prejudicial. However, here, the objection by counsel for American Family was insufficient to preserve an unfair prejudice or impermissible litigation tactic objection because the objection contained no phrases or arguments that could reasonably be expected to focus the court's attention on concerns about unfair prejudice or impermissible litigation tactics. Objecting counsel raised concerns regarding the relevance of Salg's testimony, as well as Salg's expertise and possible bias. But at no point did American Family's counsel mention unfair prejudice or the argument it now makes about impermissible litigation tactics. In this context, the trial court did not have the benefit of an effective objection and was therefore unable to properly consider the objection on the grounds of unfair prejudice or impermissible litigation tactics. Where objecting counsel offers no specific, general, or argumentative basis for his objection, the objection may not properly be considered on appeal. Further, American Family's argument that allowing Salg to testify constitutes reversible error regardless of a proper objection at trial was not argued to the court of appeals and was therefore not preserved for review.

### IV. Conclusion

We hold that when a subrogee acquires rights to pursue claims arising at law, the mere presence of subrogation does not transform the action into one in equity. Therefore, we find the trial court did not err in denying American Family's motion to strike the jury. Additionally, we find American Family failed to properly object to Salg's testimony on the grounds that it was unfairly prejudicial and failed to argue that Salg's testimony constituted an unfair litigation tactic in the courts below. Accordingly, we affirm the judgment of the court of appeals.