Colorado Court of Appeals Opinions || September 24, 2015


Colorado Court of Appeals -- September 24, 2015
2015 COA 135. Nos. 14CA0950 & 14CA0968. American Family Mutual Insurance Company v. American National Property and Casualty Company.



 Â 

 
 
 
 COLORADO COURT OF APPEALS

 
 2015 COA 135

 
 



 Court of Appeals Nos. 14CA0950 & 14CA0968
 Jefferson County District Court Nos. 12CV2550 & 12CV302550
 Honorable Dennis J. Hall, Judge


 American Family Mutual Insurance Company; Safeco Insurance Company of America; Allstate Insurance Company; IDS Property Casualty Insurance Company; Federated Mutual Insurance Company; Metropolitan Property and Casualty Insurance Company; Colorado Casualty Insurance Company; State Farm Fire And Casualty Company; Property & Casualty Insurance Company of Hartford; Sentinel Insurance Company; Westfield Insurance Company; Farmers Insurance Exchange; Mid-Century Insurance Company; Fire Insurance Exchange; Truck Insurance Exchange; Foremost Insurance Company Grand Rapids, Michigan; United Services Automobile Association; USAA Texas Lloyds Insurance Company; USAA Casualty Insurance Company; USAA General Indemnity Company; USAA County Mutual Insurance Company; Garrison Property Casualty and Insurance Company; Colorado Farm Bureau Mutual Insurance Company; and Progressive Preferred Insurance Company

 Plaintiffs-Appellants,

 v.

 American National Property and Casualty Company,

 Respondent-Appellant,

 and

 Colorado Department of Public Safety and Denver Water Board,

 Defendants-Appellees.


 JUDGMENT AND ORDER AFFIRMED

 Division I
 Opinion by JUDGE HAWTHORNE
 Taubman and Berger, JJ., concur

 Announced September 24, 2015


 Cozen OâConnor, Brad W. Breslau, Sarah Earle Killeen, Denver, Colorado, for Plaintiffs-Appellants American Family Mutual Insurance Company; Safeco Insurance Company of America; Allstate Insurance Company; IDS Property Casualty Insurance Company; Federated Mutual Insurance Company; and Metropolitan Property and Casualty Insurance Company

 Martin & Hyman, LLC, John D. Martin, Denver, Colorado; Grotefeld Hoffman Schleiter Gordon & Ochoa, LLP, Mark S. Grotfeld, Chicago, Illinois; Grotefeld Hoffman Schleiter Gordon & Ochoa, LLP, Todd Harshman, San Francisco, California, for Plaintiffs-Appellants State Farm Fire And Casualty Company; Property & Casualty Insurance Company of Hartford; Sentinel Insurance Company; Westfield Insurance Company; Farmers Insurance Exchange; Mid-Century Insurance Company; Fire Insurance Exchange; Truck Insurance Exchange; Foremost Insurance Company Grand Rapids, Michigan; United Services Automobile Association; USAA Texas Lloyds Insurance Company; USAA Casualty Insurance Company; USAA General Indemnity Company; USAA County Mutual Insurance Company; Garrison Property Casualty and Insurance Company

 McConaughy & Sarkissian, P.C., Ronald E. McConaughy, Englewood, Colorado; Hunter & Associates, Christopher J. Metcalfe, Denver, Colorado, for Plaintiff-Appellant Colorado Farm Bureau Mutual Insurance Company

 Dworkin Chambers Williams York Benson & Evans, P.C., Lacy A. Scott, Steven G. York, Denver, Colorado, for Plaintiff-Appellant Progressive Preferred Insurance Company

 Borenstein & Associates, LLC, Irvin Borenstein, Centennial, Colorado, for Respondent-Appellant

 Cynthia H. Coffman, Attorney General, Friedrick C. Haines, First Assistant Attorney General and Assistant Solicitor General, Megan Paris Rundlet, Senior Assistant Attorney General, William V. Allen, Senior Assistant Attorney General, Patricia Herron, Senior Assistant Attorney General, Denver, Colorado, for Defendant-Appellee Colorado Department of Public Safety

 Senter Goldfarb & Rice, L.L.C., Thomas S. Rice, Denver, Colorado; Patricia L. Wells, Gail Rosenschein, Kristine Bates, Denver, Colorado for Defendant-Appellee Denver Water Board

 Law Office of Steven J. Dawes, LLC, Steven J. Dawes, Denver, Colorado, for Amici Curie Colorado Counties, Inc.; Colorado Municipal League; Special District Association of Colorado

 
 Â 

 Â¶1Â Â Â Â Â Â Â Â  In this consolidated appeal, plaintiffs, twenty-five insurance companies[1] (collectively, the carriers), appeal the district courtâs judgment dismissing their inverse condemnation claims against defendants, Colorado Department of Public Safety (the Department) and Denver Water Board (Denver Water), and the courtâs order denying their motion to conduct limited discovery. We affirm.

 I. Facts and Procedural History

 Â¶2Â Â Â Â Â Â Â Â  On March 22, 2012, the Colorado State Forest Service initiated a prescribed burn on land owned by Denver Water. Mop-up operations commenced the next day. On March 26, 2012, high winds carried embers from the burn onto land located outside theÂ prescribed burnâs perimeter. A wildfire, commonly known as the Lower North Fork Fire, ignited and spread rapidly, resulting in loss of life and significant property damage.

 Â¶3Â Â Â Â Â Â Â Â  This subrogation lawsuit followed. The pleadings in this case are voluminous. Some of the carriers are original plaintiffs in the case. Others were joined as interpleaded parties. All of the carriers allege that they were subrogated to their insuredsâ claims because they paid, or expect to pay, claims to their insureds for damages caused by the wildfire.

 Â¶4Â Â Â Â Â Â Â Â  With the exception of three appellants â Colorado Farm Bureau Mutual Insurance Company, Progressive Preferred Insurance Company, and American National Property and Casualty Company â the carriers rely exclusively on inverse condemnation claims against the Department and Denver Water for their recovery. In addition to inverse condemnation claims against the Department and Denver Water, the three above-named appellants also allege negligence claims against the Department.

 Â¶5Â Â Â Â Â Â Â Â  The Department moved to dismiss the carriersâ inverse condemnation claims pursuant to C.R.C.P. 12(b)(1) and (5) for lack of subject matter jurisdiction and for failure to state a claim uponÂ which relief can be granted. Denver Water also moved to dismiss the inverse condemnation claims pursuant to Rule 12(b)(5).

 Â¶6Â Â Â Â Â Â Â Â  To respond to the Rule 12(b)(5) motions, the carriers moved to conduct limited discovery. The district court denied the motions to conduct discovery and granted the motions to dismiss. As to the motions to dismiss, the court found that the carriers had failed to allege a public purpose for the taking of their insuredsâ properties.

 Â¶7Â Â Â Â Â Â Â Â  The court also concluded that the carriersâ inverse condemnation claims were not ripe because, when the complaints were filed, the insureds were âinvolved in administrative or judicial proceedings (or both) for the purpose of obtaining just compensation for their losses,â and had not completed that process. The court reasoned that until such time as the insureds were actually denied just compensation for the alleged takings, the carriersâ inverse condemnation claims were not ripe, and, therefore, it lacked jurisdiction to hear them.Â 

 Â¶8Â Â Â Â Â Â Â Â  The district court certified its order dismissing the inverse condemnation claims as a final judgment under C.R.C.P. 54(b) for purposes of appeal.[2]

 II. Discussion

 A. The Carriersâ Standing to Pursue
 Inverse Condemnation Claims

 Â¶9Â Â Â Â Â Â Â Â  Initially, we address the Departmentâs contention that the carriers failed to allege their standing to pursue inverse condemnation claims. Specifically, the Department contends that the carriers have not established their standing because they failed to allege they paid benefits to the insured property owners for damages caused by an unlawful taking, or that any of theirÂ insuredsâ policies covered such a taking. We reject this argument because it fails to fully address the alleged subrogation relationship in this case.

 1. Standard of Review and Legal Framework

 Â¶10Â Â Â Â Â Â Â Â  Standing presents a legal question that we review de novo. Ainscough v. Owens, 90 P.3d 851, 856 (Colo. 2004). In determining whether a plaintiff has alleged an injury sufficient to confer standing, we accept as true the allegations set forth in the complaint, and we may weigh other evidence supportive of standing. Dunlap v. Colo. Springs Cablevision, Inc., 829 P.2d 1286, 1289 (Colo. 1992); Marks v. Gessler, 2013 COA 115, Â¶80.

 Â¶11Â Â Â Â Â Â Â Â  A plaintiff must have standing to bring a case. Ainscough, 90 P.3d at 855. âIn Colorado, parties to lawsuits benefit from a relatively broad definition of standing,â and the standing test âhas traditionally been relatively easy to satisfy.â Id. at 855-56. To establish standing, the plaintiff must have suffered (1) an injury in fact (2) to a legally protected interest. Sinclair Transp. Co. v. Sandberg, 2014 COA 76M, Â¶21.

 Â¶12Â Â Â Â Â Â Â Â  The injury-in-fact prong is satisfied where the plaintiff suffered a tangible injury, such as physical damage or economic harm.Â Barber v. Ritter, 196 P.3d 238, 245-46 (Colo. 2008). The injury may also be intangible, such as aesthetic issues or the deprivation of civil liberties. Ainscough, 90 P.3d at 856. The standing testâs âlegally protected interestâ prong simply requires that the plaintiff be legally protected against the alleged injury, such as by statute or constitutional provision. Id. Thus, the relevant inquiry is whether the plaintiff has a claim for relief under the constitution, the common law, a statute, or a rule or regulation. Id.

 2. Analysis

 Â¶13Â Â Â Â Â Â Â Â  When an insurer reimburses an insured for damages pursuant to a claim under the insuredâs insurance policy, the insurer enjoys a right to subrogation. Am. Family Mut. Ins. Co. v. DeWitt, 218 P.3d 318, 323 (Colo. 2009). This right allows the insurer to collect the reimbursed amount from the party responsible for the damages. Id.

 Â¶14Â Â Â Â Â Â Â Â  The subrogation right can arise pursuant to an express provision in the insurance policy â a âconventionalâ subrogation right â or under principles of equity â an âequitableâ subrogation right. Ferrellgas, Inc. v. Yeiser, 247 P.3d 1022, 1027 (Colo. 2011). According to the supreme court, regardless of how the subrogation right arises, a subrogated insurer stands in its insuredâs shoes âforÂ all legal purposes and may pursue any rights held by the insured subrogor.â DeWitt, 218 P.3d at 323. This prevents the insured party from being unjustly enriched by recovering from the insurer and the third party, and it prevents the third party from escaping liability. Cotter Corp. v. Am. Empire Surplus Lines Ins. Co., 90 P.3d 814, 833 (Colo. 2004).

 Â¶15Â Â Â Â Â Â Â Â  Each of the carriersâ pleadings alleges that the carriers paid claims, or expected to pay claims, to their insureds as a result of damage caused by the wildfire and are now subrogated to their insuredsâ claims to the extent of monies paid and to be paid. Accepting these allegations as true, as we must, the relationship between the carriers and the Department is governed by the law of subrogation in the insurance context. Thus, standing in their insuredâs shoes âfor all legal purposes,â the carriers may pursue âany rightsâ held by the insureds. DeWitt, 218 P.3d at 323.

 Â¶16Â Â Â Â Â Â Â Â  The insureds held a right to pursue an inverse condemnation claim. See Betterview Invs., LLC v. Pub. Serv. Co. of Colo., 198 P.3d 1258, 1262 (Colo. App. 2008) (actions for inverse condemnation belong to the persons owning the property at the time of the taking). Indeed, it is not disputed that the insureds, to whom the carriersÂ paid claims, were the property owners at the time of the wildfire that resulted in the alleged taking. Nor is it disputed that the property owners had suffered injuries-in-fact (property damage and economic loss) to legally (constitutionally) protected interests as a result of the wildfire. Because the insureds had a right to pursue inverse condemnation claims, we conclude that, standing in their shoes by virtue of the alleged subrogation relationship, the carriers have sufficiently alleged their standing to pursue such claims.

 B. Ripeness

 Â¶17Â Â Â Â Â Â Â Â  The carriers also contend that the district court erred by determining that their inverse condemnation claims were not ripe. Specifically, they contend that because they were not (and could not) participate in the special administrative proceedings established by the legislature, their claims were ripe.

 Â¶18Â Â Â Â Â Â Â Â  At oral argument, the parties conceded that this claim is moot because the administrative proceedings have all been concluded. Accordingly, we need not address it.

 C. Public Purpose

 Â¶19Â Â Â Â Â Â Â Â  The carriers contend that the district court erred by granting the Departmentâs and Denver Waterâs C.R.C.P. 12(b)(5) motions toÂ dismiss their inverse condemnation claims because they pleaded a public purpose. Because we conclude the carriersâ failed to allege, and could not allege, a public purpose for the taking of their insuredsâ properties, we disagree.

 1. Standard of Review

 Â¶20Â Â Â Â Â Â Â Â  We review de novo a district courtâs order granting a Rule 12(b)(5) motion to dismiss. Colo. Ethics Watch v. Senate Majority Fund, LLC, 2012 CO 12, Â¶16. In our review, we apply the same standards as the district court. Cherokee Metro. Dist. v. Upper Black Squirrel Creek Designated Ground Water Mgmt. Dist., 247 P.3d 567, 572 (Colo. 2011). And we accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff. Id.

 Â¶21Â Â Â Â Â Â Â Â  Also, we consider only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference, and matters proper for judicial notice. Denver Post Corp. v. Ritter, 255 P.3d 1083, 1088 (Colo. 2011). We liberally construe the pleadings and resolve all doubts in the pleaderâs favor. Hemmann Mgmt. Servs. v. Mediacell, Inc., 176 P.3d 856, 859 (Colo. App. 2007).

 Â¶22Â Â Â Â Â Â Â Â  A Rule 12(b)(5) motion is viewed with disfavor. Pub. Serv. Co. of Colo. v. Van Wyk, 27 P.3d 377, 385-86 (Colo. 2001). A complaint should not be dismissed unless it appears beyond a doubt that a claimant can prove no set of facts in support of his or her claim that would merit relief. Id.; Fry v. Lee, 2013 COA 100, Â¶18. The purpose of a Rule 12(b)(5) motion is to test the complaintâs formal sufficiency. Van Wyk, 27 P.3d at 385; Wagner v. Grange Ins. Assân, 166 P.3d 304, 306 (Colo. App. 2007).

 Â¶23Â Â Â Â Â Â Â Â  Nonetheless, Rule 12(b)(5) allows a court to dismiss a complaint for failure to state a claim upon which relief can be granted.

 2. Legal Framework

 Â¶24Â Â Â Â Â Â Â Â  An inverse condemnation claim under Colorado law derives from the Colorado Constitutionâs takings clause. G & A Land, LLC v. City of Brighton, 233 P.3d 701, 705 (Colo. App. 2010). It provides property owners a remedy when a government entity âtakesâ private property for a public purpose without initiating and following formal condemnation proceedings. Id. Because an inverse condemnation claim is rooted in the constitution, it is treated as an eminent domain proceeding. Id. at 706.

 Â¶25Â Â Â Â Â Â Â Â  Inverse condemnation does not require a physical taking of property. Id. The claim may result from nonacquisitive governmental action âwhen the governmental activity substantially impairs an ownerâs use of the property.â Bd. of Cnty. Commârs v. Flickinger, 687 P.2d 975, 983 (Colo. 1984).

 Â¶26Â Â Â Â Â Â Â Â  To prove an inverse condemnation claim under the Colorado Constitution, a property owner must show that (1) there has been a taking or damaging of a property interest; (2) for a public purpose; (3) without just compensation; (4) by a governmental or public entity that has the power of eminent domain, but which has refused to exercise that power. Kobobel v. State, Depât of Natural Res., 249 P.3d 1127, 1133 (Colo. 2011); Scott v. Cnty. of Custer, 178 P.3d 1240, 1244 (Colo. App. 2007).

 3. Analysis

 Â¶27Â Â Â Â Â Â Â Â  In its order dismissing the carriersâ inverse condemnation claims, the district court concluded that the carriers had alleged, and could prove, no set of facts that would establish that the taking of the insuredsâ properties served, or was intended to serve, a public purpose. We agree with the district court.Â 

 Â¶28Â Â Â Â Â Â Â Â  âThere is no precise definition of public purpose; it must be determined on a case-by-case basis.â Bd. of Cnty. Commârs v. Kobobel, 176 P.3d 860, 863 (Colo. App. 2007). The relevant inquiry is whether the condemnationâs essential purpose is to obtain a public benefit. Id.; Silver Dollar Metro. Dist. v. Goltra, 66 P.3d 170, 174 (Colo. App. 2002); Denver West Metro. Dist. v. Geudner, 786 P.2d 434, 436 (Colo. App. 1989).

 Â¶29Â Â Â Â Â Â Â Â  None of the carriersâ âpublic purposeâ allegations explains how the alleged taking of their insuredsâ private property furthered the purposes for which the prescribed burn was initiated. Nor do the carriers allege that such taking furthered some other public purpose. Indeed, none of the claims alleges a public purpose for the taking of the insuredâs properties. Three of the claims fail to allege a public purpose at all. The remaining claims of public purpose are limited to the prescribed burn. Typical of these public purpose allegations are those set forth in the third amended complaint filed by seven of the carriers:

 (As to the Department): The Prescribed Fire was ignited for public purposes, including, but not limited to, protecting the public, afeguarding the public water supply, andÂ enhancing public aesthetics and recreational opportunities.

 (As to Denver Water): The Prescribed Fire was ignited for public purposes, including, but not limited to, safeguarding the water supply of the City and County of Denver and surrounding communities.

 Â¶30Â Â Â Â Â Â Â Â  An inverse condemnation claim under the Colorado Constitution requires that the taking itself be accomplished for a public purpose. See, e.g., Trinity Broad. of Denver, Inc. v. City of Westminster, 848 P.2d 916, 921 (Colo. 1993) (inverse condemnation claim requires that the government or public entity have intended to use the condemned property for a proper public purpose); Silver Dollar, 66 P.3d at 174 (âIn reviewing the condemning authorityâs finding that a proposed taking is for public use, the courtâs role is to determine whether the essential purpose of the condemnation is to obtain a public benefit.â); State Depât of Highways v. Denver & Rio Grande W. R.R. Co., 757 P.2d 181, 183 (Colo. App. 1988) (â[T]he purpose of the condemnation must be for the public benefit.â). TheÂ carriers failed to allege that the taking of their insuredsâ properties served, or was intended to serve, a public purpose.[3]

 Â¶31Â Â Â Â Â Â Â Â  The carriers argue that unlike an eminent domain claim, an inverse condemnation claimâs âpublic purposeâ element includes âthe unintended, but natural, direct, or probable consequence of an authorized action.â According to the carriers, because they pleaded an unintentional taking that was the direct consequence of the prescribed burn, the district court erred by not extending theÂ prescribed burnâs public purpose to the direct, natural, or probable results of igniting that burn, namely, the taking of their insuredsâ properties. The district court rejected this so-called imputed public purpose argument. We also reject it.

 Â¶32Â Â Â Â Â Â Â Â  The carriersâ argument blurs the difference between the âtakingâ and the âpublic purposeâ elements of an inverse condemnation claim. Colorado law is clear that a plaintiff may establish the âtakingâ element by showing that the state intended to take private property or to do an act the direct, natural, or probable consequence of which is to result in a taking of private property. Scott, 178 P.3d at 1244. ââIn other words, the government must have the intent to take the property or to do an act which has the natural consequence of taking the property.ââ Id. (quoting Trinity, 848 P.2d at 921-22). But even where the âtakingâ element is shown, the plaintiff must also show that the taking was for a public purpose. Trinity, 848 P.2d at 921. The public purpose of an intended act (the prescribed burn) that ultimately results in an unintentional âtakingâ (the wildfire) does not transfer to and supplyÂ the âpublic purposeâ for that taking.[4] Stated differently, merely showing that the taking was the direct, natural, or probable consequence of the stateâs intended act does not necessarily establish that the taking was for a public purpose.

 Â¶33Â Â Â Â Â Â Â Â  The Texas case of City of Austin v. Liberty Mut. Ins., 431 S.W.3d 817 (Tex. App. 2014), is instructive and supports our conclusion. There, several property owners suffered damage from a fire that sparked after two of the cityâs power transmission lines touched during a windstorm. Certain homeowners and insurance companies filed suit against the city asserting inverse condemnation claims.

 Â¶34Â Â Â Â Â Â Â Â  Similar to Colorado law, an inverse condemnation claim under Texas law requires that the taking have been accomplished for public use. Id. at 826. On appeal, in finding that the plaintiffs failed to allege that the property was damaged for public use, the court noted that the public use that had been pleaded was âpower transmission.â Id. at 827. The court stated, â[b]ut appellees do not allege or explain how the damage to their property advanced thatÂ purpose. . . . When property damage is an unintended result of the governmentâs act or policy, it cannot be said that the property was taken or damaged for public use.â Id. (internal quotation marks omitted and emphasis deleted).

 Â¶35Â Â Â Â Â Â Â Â  Although it deals primarily with the âtakingâ element of an inverse condemnation claim, the divisionâs decision in Scott v. County of Custer best illustrates how state action that has the direct, natural, or probable consequence of taking private property may satisfy the âpublic purposeâ requirement even though the state lacked the specific intent to effect the taking. In Scott, the county removed various trees to complete a public road project. 178 P.3d at 1243. However, unbeknownst to the county, some of the trees it removed belonged to the plaintiff. Id. The plaintiff filed an inverse condemnation action against the county. A public purpose existed because removing the trees, including the plaintiffâs trees, was necessary to complete the road improvement project, and the county planned and intended to cut down the trees. Id. at 1247.

 Â¶36Â Â Â Â Â Â Â Â  This is not the case here. Damaging private property was not part of the prescribed burnâs plan and, as the district court pointed out, was not required to mitigate the danger of wildfire. In fact,Â damage to private property was the opposite of what was intended. The controlled burn was initiated to protect land and other resources from destruction by fire, and the public benefit of that burn was the removal of dangerous fuels in a controlled manner. The ensuing wildfire was the precise scenario the controlled burn was ignited to avert.

 Â¶37Â Â Â Â Â Â Â Â  We reject the carriersâ argument that the district court erred by treating the fire as two separate events, which created an internally inconsistent order. Specifically, the carriers maintain that the court found they âalleged sufficient facts to show that the spreading of the prescribed burn to private property was the direct, natural, or probable result of setting the fire. . . . But when analyzing the âpublic purposeâ element, the court disregarded that finding.â As explained above, the direct, natural, or probable result of setting the fire relates only to whether a taking occurred. It does not relate to whether that taking was for a public purpose.

 Â¶38Â Â Â Â Â Â Â Â  Insofar as the carriers argue that because the wildfire was the direct, natural, or probable result of the controlled burn, the district court should have treated the fire as a single event, we disagree. Whether one or more fires existed is not important because, asÂ stated above, the focus of an inverse condemnation claim is on the alleged taking itself. The âtakingâ and âpublic purposeâ elements of such claim are independent. It makes no difference whether the court treated the fire as a single event or as two separate events because the carriers failed to allege that the taking of their insuredsâ private property was for a public purpose.

 Â¶39Â Â Â Â Â Â Â Â  Given this conclusion, we necessarily reject the carriersâ related conclusory assertions that by treating the fire as two separate events the court âdecided a question of fact as to whether there was one or two firesâ and changed the nature of the pleadings by reframing the public purpose issue.

 Â¶40Â Â Â Â Â Â Â Â  We also reject the carriersâ argument that the district court erred by applying a âlong-discarded litmus test for analyzing an inverse condemnation claim.â The carriers claim that âthe proper evaluation here is not whether the destruction of adjacent landownersâ property directly benefited the public, but whether the overall objective of the government project â the Lower North Fork prescribed burn â comprised a public benefit.â We rejected this argument above.

 Â¶41Â Â Â Â Â Â Â Â  For these reasons, we conclude the carriers failed to, and could not, allege that any âtakingâ of their insuredsâ private properties was for a public purpose. Accordingly, we conclude that the district court properly granted the Departmentâs and Denver Waterâs C.R.C.P. 12(b)(5) motions to dismiss. Given this conclusion, we need not address the Departmentâs and Denver Waterâs arguments that the court erred by finding that the carriers pleaded sufficient facts to satisfy the takings element of their inverse condemnation claims. Nor need we address the Departmentâs arguments that the state had no authority to condemn the properties as part of the prescribed burn and no compensable taking could have occurred because the prescribed burn was a valid exercise of the stateâs police power.

 Â¶42Â Â Â Â Â Â Â Â  Finally, insofar as the carriers attempt to argue that the court erred by dismissing its inverse condemnation claims under the federal constitution, we are unable to address this argument. The carriersâ allegations of error on appeal are limited to inverse condemnation claims under Colorado law. They do not set forth the elements of an inverse condemnation claim under federal law, nor do they make any ascertainable argument as to how they stated aÂ claim for relief under the federal constitution. At best, the carriersâ claim amounts to a conclusory assertion, which we will not consider because it lacks legal argument and development. See Vickery v. Evelyn V. Trumble Living Trust, 277 P.3d 864, 870 (Colo. App. 2011) (declining to consider a conclusory legal proposition devoid of legal argument or analysis).

 D. Motion to Conduct Discovery

 Â¶43Â Â Â Â Â Â Â Â  The carriers contend that the district court erred by denying their motion to conduct discovery to respond to the Departmentâs and Denver Waterâs C.R.C.P. 12(b)(5) motions to dismiss for failure to state a claim. We are not persuaded.

 Â¶44Â Â Â Â Â Â Â Â  As an initial matter, although no party raised the issue in their appellate briefs, we address our jurisdiction to review the district courtâs order denying the carriersâ discovery request. We conclude that although only the district courtâs order dismissing the carriersâ inverse condemnation claims was certified as a final judgment under Rule 54(b) for purposes of appeal, because the courtâs discovery order related to and could have substantively affected the certified order, we have jurisdiction to consider it. See McDonald v. Zions First Natâl Bank, 2015 COA 29, Â¶Â¶32, 38 (appellate court mayÂ consider the order certified as a final appealable judgment under Rule 54(b) and those matters that could substantively affect that judgment).

 1. Standard of Review

 Â¶45Â Â Â Â Â Â Â Â  Discovery rulings, including rulings limiting discovery, are within the district courtâs sound discretion and will not be disturbed on appeal absent an abuse of that discretion. Silva v. Wilcox, 223 P.3d 127, 136 (Colo. App. 2009). The district court abuses its discretion if its discovery ruling is manifestly arbitrary, unreasonable, or unfair. Wenz v. Natâl Westminster Bank, PLC, 91 P.3d 467, 469 (Colo. App. 2004).

 2. Analysis

 Â¶46Â Â Â Â Â Â Â Â  After the Department and Denver Water moved to dismiss the carriersâ inverse condemnation claims pursuant to Rule 12(b)(5), the carriers moved for leave to conduct discovery to respond to the motions. In denying the motion, the court cited C.R.C.P. 16(b)(10), which states that except as provided in C.R.C.P. 26(d), discovery may commence forty-two days after the case is at issue. In its order, the court stated that the case is ânot close to being at issue and, accordingly, is not in a posture in which discovery wouldÂ ordinarily be conducted.â Noting also that the purpose of a Rule 12(b)(5) motion is to test a claimâs legal sufficiency, which âby definition [does] not involve factual matters outside the pleadings,â the court concluded that âno good cause has been shown to conduct discovery in derogation of the above-cited Rules.â

 Â¶47Â Â Â Â Â Â Â Â  We agree with the trial courtâs reasoning, and, thus, we discern no abuse of discretion. And, even if the court had erred by denying the discovery request, the carriers were not prejudiced. As relevant here, the carriers sought discovery on the âtakingâ element of their inverse condemnation claims. As for this element, in addressing the Rule 12(b)(5) motions, the court ruled in the carriersâ favor. Consequently, it is apparent that the requested discovery on this element was not needed.

 Â¶48The carriers also requested discovery on the âpublic purposeâ element. Specifically, they requested discovery âon the management of the land, including Unit 4A where the Prescribed Burn originated, which will show that the purpose behind the Prescribed Burn was for the benefit of the greater community . . . .â So, any discovery would not have remedied the carriersâ failure toÂ plead a public purpose for the alleged taking of their insuredsâ private properties.

 III. Conclusion

 Â¶49Â Â Â Â Â Â Â Â  The district courtâs order and judgment are affirmed.

 JUDGE TAUBMAN and JUDGE BERGER concur.


 [1] Plaintiffs are: American Family Mutual Insurance Company; Safeco Insurance Company of America; Allstate Insurance Company; IDS Property Casualty Insurance Company; Federated Mutual Insurance Company; Metropolitan Property and Casualty Insurance Company; Colorado Casualty Insurance Company; State Farm Fire and Casualty Company; Property & Casualty Insurance Company of Hartford; Sentinel Insurance Company; Westfield Insurance Company; Farmers Insurance Exchange; Mid-Century Insurance Company; Fire Insurance Exchange; Truck Insurance Exchange; Foremost Insurance Company Grand Rapids, Michigan; United Services Automobile Association; USAA Texas Lloyds Insurance Company; USAA Casualty Insurance Company; USAA General Indemnity Company; USAA County Mutual Insurance Company; Garrison Property Casualty and Insurance Company; Colorado Farm Bureau Mutual Insurance Company; Progressive Preferred Insurance Company; and American National Property and Casualty Company.

 [2] In its Answer Brief, the Department claims that the district courtâs order dismissing the carriersâ inverse condemnation claims is not a final order as to appellants âAmerican National, Progressive, and Colorado Farm Bureau.â We presume the Department refers to American National Property & Casualty Company, Progressive Preferred Insurance Company, and Colorado Farm Bureau Mutual Insurance Company. Thus, according to the Department, the courtâs C.R.C.P. 54(b) certification is not effective to authorize their appeals. We disagree. Even though the above-named insurance companies continue to rely on negligence claims in addition to inverse condemnation claims, the courtâs order dismissing the inverse condemnation claims applied to all of the carriers. The court properly certified that order as final pursuant to Rule 54(b) for purposes of appeal. The certification order does not exclude the three above-named carriers. Therefore, we conclude that the courtâs Rule 54(b) motion was effective to authorize their appeals.

 [3] All of the inverse condemnation claims in this case were based on the Takings Clause of the Colorado Constitution. Colo. Const. art. II, Â§ 15. No claims were pleaded under the Takings Clause of the United States Constitution. U.S. Const. amend. V. As all parties concede, one of the elements of a claim for inverse condemnation under Colorado law is that there must be a public purpose for the taking. Kobobel v. State, Depât of Natural Res., 249 P.3d 1127, 1133 (Colo. 2011). We express no opinion whether the âpublic useâ element of the Takings Clause of the Fifth Amendment of the United States Constitution as applied by the United States Supreme Court is identical to the âpublic purposeâ requirements under Colorado law. See Kelo v. City of New London, 545 U.S. 469, 480 (2005); see also Steamboat Lake Water & Sanitation Dist. v. Halvorson, 252 P.3d 497, 504 (Colo. App. 2011) (discussing the Kelo amendment found in section 38-1-101(1)(b)(I), C.R.S. 2014). Similarly, we express no opinion whether, under the circumstances presented in this case, the result of a claim under the Fifth Amendmentâs Takings Clause would have been the same as the result prescribed by Colorado law. See Hansen v. United States, 65 Fed. C1. 76 (2005).

 [4] Because of our disposition, we need not (and do not) express an opinion as to whether the facts of this case satisfy the âtakingâ element of an inverse condemnation claim.




These opinions are not final. They may be modified, changed or withdrawn in accordance with Rules 40 and 49 of the Colorado Appellate Rules. Changes to or modifications of these opinions resulting from any action taken by the Court of Appeals or the Supreme Court are not incorporated here. 



Colorado Court of Appeals Opinions || September 24, 2015


Back